EDWARD A. GUNDERMAN v. ELIHU GUNNISON.

*Assignment of land-certificate as security—Entry of decree nunc pro tunc.*

Where an assignment of a land-certificate is meant by the parties as security for debts existing and to be incurred, the relation established between them is that of mortgager and mortgagee.

A complainant sought to redeem lands which he claimed to have transferred as security. Defendant answered that the assignment was absolute. Complainant replied that defendant had invited the transfer in order that the lands might be screened from an unfounded proceeding against complainant. Defendant denied that he so received it, or knew anything about the proceeding, as to which it did not appear whether it was well founded or not except from complainant's testimony that it was not. *Held* that in the absence of any showing that there was a debtor to be cheated, and in view of defendant's denial that the transfer was for that purpose, defendant could not claim that complainant's averment of the dishonest purpose of the transfer was sufficient ground for refusing to construe the transaction as a mortgage.

Where a defendant in a chancery proceeding has died after the submission of the case, the decree may be entered *nunc pro tunc* as of the day when the case was heard.

Appeal from Clinton. Submitted June 19. Decided October 15.

BILL TO REDEEM LANDS. Defendant's executors appeal.

*Cowles & Cahill* for complainant. The right of redemption from a transfer intended as a security exists whether the transferee had agreed to it or not, *Batty v. Snook*, 5 Mich., 231; *Comstock v. Howard*, Walk. Ch., 110; *Cornell v. Hall*, 22 Mich., 377; *Enos v. Sutherland*, 11 Mich., 538; *Wadsworth v. Loranger*, Har. Ch., 113; *Emerson v. Atwater*, 7 Mich., 12, a defendant can take no advantage of what was done at his request, *Barnes v. Brown*, 32 Mich., 146.

*Dart & Shields* for defendant. Equity will not com-

pel a reconveyance of land that has been transferred in fraud of creditors, *Patterson v. Brown*, 32 N. Y., 81; *Martin v. Wagener*, 60 Barb., 435; *Grove v. Jeager*, 60 Ill., 249; *Gage v. Gage*, 36 Mich., 229; 1 Story's Eq. Jur., § 433; even if it was at the suggestion of defendant, *Fargo v. Ladd*, 6 Wis., 106; *Turner v. Campbell*, 3 Gratt., 79; *Drinkwater v. Drinkwater*, 4 Mass., 359.

GRAVES, J. October, 1853, complainant purchased of the State forty acres of school land in Clinton county at the price of $160, and paid down $40 and received a certificate of purchase in the usual form. December, 1857, he made an assignment of the certificate, absolute in form, to defendant. At this time they had for many years been friends and neighbors and complainant was indebted to defendant in the sum of about $12 or a little less. Complainant was in occupation of the lot and has since continued in it. He has paid the most of the taxes and interest to the State, and has used the land and made some improvement. Defendant has likewise paid taxes and interest on one or two occasions. The relations of the parties were somewhat confidential and their mutual dealings seem to have embraced many small transactions. At the time of the assignment one Sturgis was pressing a demand by action against complainant, and which the latter regarded as unjust. As part of the transaction when the certificate was transferred, complainant executed to defendant a bill of sale of bees, farm stock and products, and amounting with the land, which was valued at $115, to the sum of $187.06, as stated in the bill of sale. In this paper complainant admitted payment of the price by satisfaction of the old debt of about $12 and receipt of defendant's note for $176.67 payable in three years. This note if given was never paid and became barred many years ago.

Some time later than April 1st, 1864, and probably about that time, the precise date not appearing, defend-

ant made out an account of matters between himself and complainant, and gave it to the latter.   In this paper he set down as a demand still due him from complainant, the old debt of about $12 and also charged complainant for interest paid in 1863 on the land certificate.   Prior to 1863, but the accurate date not being shown, defendant became owner of a mortgage of about $125 on another forty-acre lot of complainant and on which the latter lived.

February, 1875, the defendant without any new consideration, if any whatever, canceled this mortgage and gave it up to complainant.

April 20, 1876, the parties disagreed about their affairs and became angry.   Finally an arbitration was mutually assented to, but was afterwards declined, and within a day or two the defendant paid the balance owing to the State, surrendered the certificate and took a patent in his own name.   This bill was then filed. The complainant alleged that the school land certificate was assigned to defendant merely as security for the old debt of about $12 and was in fact and in equity nothing but a mortgage, and so intended by the parties, and redemption was prayed.

The answer denied that the assignment was made as security and insisted that it was in fact what it was in form, an absolute sale.   It further claimed that complainant was urgent to sell in order to secure the property from Sturgis.   The parties were the main witnesses and on some essential points their testimony was contradictory and in particular respects improbable.   No doubt age had impaired their memories.   Among other things complainant stated that the defendant gave up to him the mortgage debt on the other lot as a pure gift, and defendant deposed that complainant in later years had complained that he had not received as much for the property as its value warranted, and hence to satisfy him, but not on account of any legal obligation, he gave up the mortgage debt on the other lot as paid.

That complainant told him if he "would assign over that mortgage, he would give up all claims to the other forty, real or imaginary." That it was the understanding that complainant might occupy .if he would pay the taxes and interest. It is not necessary to rehearse the pleadings or specify all the facts. The circuit court decreed relief and an appeal against it was taken.

*First.* The fair effect of the whole evidence, direct, circumstantial and presumptive, is to prove that the parties intended that between themselves the transaction should be an assignment as security for the valid existing debt of about $12, and not an absolute sale; and subsequently, if not at the same time, they concurred in an understanding upon which they acted that further indebtedness springing from their dealings should stand secured in the same manner. That pursuant to such design the old debt of about $12 was kept on foot and not canceled, and new indebtedness was recognized as an addition. Hence, as between themselves, the relation was that of mortgager and mortgagee. Besides our own cases, reference is made to late ones elsewhere. *Campbell v. Dearborn,* 109 Mass., 130; *Odell v. Montross,* 68 N. Y., 499; *Wilson v. Giddings,* 28 Ohio St., 554; *Morgan's Assignees v. Shinn,* 15 Wall., 105.

*Second.* The bill does not suggest or even vaguely intimate that the cause or any part of the cause of making the assignment in form absolute was to hinder Sturgis from meddling with the property. It sets up the transaction as a mortgage and nothing else, and claims redemption. The answer, which was not on oath, alleged that complainant called on defendant and importuned him to purchase his, complainant's, interest in the land certificate, "pretending to defendant that he was compelled to sell it to keep it from being taken on execution, or other process, by his creditors, and that defendant did then and there purchase of said complainant his interest in said land certificate for said

land." On being sworn as a witness the defendant repudiated fully and distinctly this statement in his answer, and testified to a state of facts repugnant to any such ground of defense. The complainant, however, departing from the bare case in the bill, testified in explanation of the transaction that defendant invited him to assign the certificate in order to secure the property from Sturgis, and that the transfer was made in the form which was given to it with that design. The defendant now insists that this statement of complainant, which he positively contradicts, is sufficient to require the court to refuse to interfere and construe the transaction as a mortgage.

Without entering into the question whether the court might not set aside this objection on the broad principle that as between the parties the transaction was not void (*Hess v. Final*, 32 Mich., 515; *McAuliffe v. Farmer*, 27 Mich., 76; *Millar v. Babcock*, 29 Mich., 526; *Harvey v. Varney*, 98 Mass., 118; *Clemens v. Clemens*, 28 Wis., 637; *Springer v. Drosch*, 32 Ind., 486; *Brooks v. Martin*, 2 Wall., 70), it is sufficient to observe that this matter of defense is not so raised and grounded as to call upon the court to act on it. *Haigh v. Kaye*, L. R. 7 Ch. App., 469. The defendant does not boldly speak out and say that complainant giving him his confidence placed the property in his hands to cheat a creditor, and that he in violation of all faith and trust means to hold it as his own. He flatly denies having received the property in that way, and then falls back on complainant's showing in that direction and seeks the same advantage from it as though he admitted it to be true. But what is complainant's explanation? It is that Sturgis sued him but had no cause of action, and that defendant advised that the assignment should be made as a sale in order to keep Sturgis off, and that the transfer was shaped as a sale under that suggestion. This is a discreditable admission, but it is not sufficient for the purpose of defendant, who denies and repudiates it. There is no

explanation in words of the fate of that suit.     Every thing rests on the statements of complainant, and as he swears it was baseless, it is reasonable to intend that it was actually abandoned.     The defendant makes no claim that it was kept up.     On the contrary, he asserts that he was not aware of any such suit.     The transaction is consequently left as though no outstanding matter existed to be affected, and certainly the objection cannot find support in the fact that there was a mental purpose to cheat, but which could never take effect for the want of a creditor to be injured.     *Boyd v. De LaMontagnie,* 73 N. Y., 498.

*Third.* The cause was fully heard in term, namely, May 22, 1877, and taken under advisement.     At the succeeding November term the judge was ready to pronounce his decree, and in fact did pronounce it at that term, namely, November 21st, 1877.     It was then made to appear that the defendant had died in the meantime, and the judge thereupon incorporated an order in the decree, requiring it to be entered *nunc pro tunc* as of the day when the cause was heard.     This is said to be a fatal error.     On the contrary, it was strictly regular to give the decree relation back and order it to be entered as of the time when the cause was heard.     Seton, 1137;   2 Dan. Ch. Prac., 1016, 1017;   *Cumber v. Wane,* 1 Strange, 426;   *Davies v. Davies,* 9 Ves., 461;   *Belsham v. Percival,* 8 Hare, 157;   *Bank of U. S. v. Weisiger,* 2 Pet., 331, 481;   *Campbell v. Mesier,* 4 Johns. Ch., 334;   *Vroom v. Ditmas,* 5 Paige, 528;   *Wood v. Keyes,* 6 Paige, 478;   *Kelley v. Riley,* 106 Mass., 339;   *Emery v. Parrott,* 107 Mass., 95;   *Tapley v. Goodsell,* 122 Mass., 176;   Freeman on Judgments (2d ed.), §§ 56, 57.

The decree should be affirmed with costs.

The other Justices concurred.