## Schaeffer, to use, *v.* Coldren, et al., Appellants.

*Equity—Specific performance—Agreement to sell land—Sufficiency of tender—Certified check—Estoppel.*

1. One party to a contract may not mislead the other party, by agreeing to a modification of the terms of payment, and then at the last moment, when it is too late to make other arrangements, refuse to accept the terms agreed upon and thus defeat the right to exercise an option.

2. Acts insufficient in themselves to make a complete tender may operate as proof of readiness to perform so as to protect the rights of a party under the contract, where a proper tender is made impossible by reason of circumstances not due to the fault of the tenderer.

3. A certificate of deposit or certified check is a sufficient tender, if no objection be made on the ground that it is not lawful money.

4. In a proceeding for the specific performance of a contract to sell land, it appeared that the defendant had agreed in writing to sell certain real estate to the plaintiff, with the proviso that the contract should be void if the purchase money were not paid on a

day specified; that on the last day for exercising the option the defendant agreed in writing and for a consideration to extend the option for ten days; that a few days later the defendant agreed to a modification of the terms of payment and upon the last day of the extended period the plaintiff made an effort to comply with the terms of the second agreement as modified, and was prevented by the defendant's failure to appear, but left a certified check for the amount agreed upon with the defendant's wife at his home; that the plaintiff returned to the defendant's house the same night for the purpose of making tender by certified check of the full amount of the purchase money under the original agreement but could not gain admission, although the defendant was at home at the time; that at the earliest opportunity the plaintiff informed the defendant what he had done and tendered a certified check for the balance which the defendant refused, without objecting to the form of tender and without offering to return the check left with his wife. *Held,* that this transaction constituted a sufficient tender to warrant a decree for specific performance of the original agreement.

*Practice, equity—Decree—Death of party after final argument.*
5. Where the plaintiff or defendant dies after final argument, but before the entry of the decree, the court may direct the decree to be entered as of a date prior to the death of the party.

Argued April 17, 1912. Appeal, No. 15, Jan. T., 1912, by defendants, from decree of C. P. Centre Co., Aug. T., 1905, No. 3, in Equity in case of Lewis A. Schaeffer, now for use of Rembrandt Peale and T. A. Shoemaker, v. W. H. Coldren, Agnes Coldren, Frank Warfield, John P. Harris and American Lime and Stone Co. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Modified.

Bill for specific performance. Before SAVIDGE, P. J., specially presiding.

The opinion of the Supreme Court states the case.

*Errors assigned,* among others, were in overruling demurrer of Frank Warfield, John P. Harris and American Lime and Stone Co., and in overruling defendant's exceptions to certain findings of fact and of law.

*T. C. Hipple,* with him *Stevens & Pascoe,* for appellant.—An acceptance of an option, to be good, must be such as amounts to an agreement or contract between the parties; such an acceptance can be only an unconditional one.......It must, in every respect, meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points, and closing with them just as they stand: Barnes v. Rea, 219 Pa. 279.

A certified check was not a good tender: Girard Bank v. Penn Twp. Bank, 39 Pa. 92; Merchants Bank v. State Bank, 77 U. S. 604; Lynch v. First Nat. Bank, 107 N. Y. 179 (13 N. E. Repr. 775); Barbour v. Hickey, 24 L. R. A. 763.

Appellant contends that Schaeffer was in default and had no legal right to make a tender at a late and unreasonable hour: Wing v. Davis, 7 Maine 31; Buess v. Koch, 10 Hun. 299; McClartey v. Gokey, 31 Ia. 505.

*C. La Rue Munson* and *John Blanchard,* with them *Edmund Blanchard,* for appellees.—No principle of law or equity will permit a manifest subterfuge and evasion on the part of the optioner to be used as a means of benefiting himself by his own wrong and of avoiding his own solemn written contract: Barnes v. Rea, 219 Pa. 287; Wilhelm's App., 79 Pa. 120; Tiernan v. Roland, 15 Pa. 429; Murphy v. Hussey, 117 La. 390 (41 So. Repr. 692).

The tender of the check was good: Pershing v. Feinberg, 203 Pa. 144; Philadelphia Company v. Renner, 222 Pa. 512.

The option was exercised within the limit: Hatfield v. Clovis, 219 Pa. 168; Pennsylvania Mining Co. v. Smith, 207 Pa. 210; Thomson v. Life Ins. Co., 4 Pa. D. R. 382; Croft's Est., 17 Phila. 103.

But where a plaintiff or defendant dies after the final argument and before decree, the court may by order cause the decree to be entered as of a date prior to the

death of the party: Davies v. Davies, 9 Ves. Jr. 461;
Campbell v. Mesier, 4 Johns Ch. (N. Y.) 334; U. S.
Bank v. Weisiger, 27 U. S. 481; Mitchell v. Overman,
103 U. S. 62; Benson v. Wolverton, 16 N. J. Eq. 110;
Gunderman v. Gunnison, 39 Mich. 313; Mayfield v.
Stephenson, 6 Baxt. (Tenn.) 403; Vroom v. Ditmas, 5
Paige (N. Y.) 528.

OPINION BY MR. JUSTICE ELKIN, July 2, 1912:

Before proceeding to a discussion of the questions re-
lating to the merits of the controversy between the par-
ties to the original bill, it is necessary to consider
whether the demurrer filed by Warfield, Harris and the
American Lime and Stone Company should have been
sustained. This question has been discussed at length
in the case of Schaeffer v. Herman and others, 237 Pa.
86, in an opinion this day handed down. It will not
be necessary to elaborate the discussion for the purposes
of the present case; it is sufficient to say that nothing
done by Warfield, Harris and the American Lime and
Stone Company in connection with the second option,
has anything to do with the rights of the parties under
the first agreement. The primary purpose of the bill is
to enforce as against the Coldrens the specific perform-
ance of the first agreement by compelling a conveyance
of the land to the parties who are asserting title thereto.
Matters relating to the second option grow out of a
separate transaction with which different parties are
connected. The demurrer should have been sustained
and the bill dismissed as to Warfield, Harris and the
American Lime and Stone Company. This, however,
does not affect the right of the plaintiffs to demand spe-
cific performance, and secure equitable relief, as against
the other parties properly included in the bill. As to
the remaining parties the bill may be maintained if the
facts warrant it. It is a bill for specific performance
of an optional agreement for the sale of land. In order
to understand the questions involved it is necessary to

recite the material facts upon which the rights of the
parties depend.  Coldren and his wife, by a contract in
writing, agreed to sell and convey a certain described
tract of land to Schaeffer, his heirs and assigns, for the
sum of $8,000.00.  The covenant to sell and convey was
absolute on its face, but the entire agreement became
optional by reason of a subsequent clause which pro-
vided that the contract shall be deemed null and void
if the $8,000 be not paid on a day specified.  On the last
day for exercising the option, Schaeffer paid one hun-
dred dollars for an extension of ten days, which exten-
sion is in writing, signed by Coldren and his wife, as
was the original agreement.  By this extension, for
which there was ample consideration, Schaeffer clearly
had the right to exercise the option according to the
terms of the agreement on or before July 15, 1905.  A
few days after Schaeffer secured the extension he began
negotiations with Coldren for the purpose of arranging
different terms of payment.  He desired to make a cash
payment of $2,500, and to secure the balance by a mort-
gage upon the property.  The learned court below, sit-
ting as a chancellor, found as a fact that Coldren agreed
to the modified terms of payment several days before
the option expired, and that according to the arrange-
ment Schaeffer was to have all the necessary papers
prepared so that the transaction could be closed out on
the following Saturday, when Coldren was to come to
Bellefonte for this purpose.  This was the last day upon
which the option could be exercised, and the parties
had agreed that Schaeffer should have a certified check
for the cash payment of $2,500, and be prepared to exe-
cute the necessary papers to secure the balance of the
purchase money when the deed was delivered.  Coldren
did not appear in Bellefonte on the day appointed, and
all of his actions indicate, as the chancellor has found,
that his purpose was to prevent the consummation of
the contract by evading Schaeffer in his effort to exer-
cise the option within the time limited.  When Coldren

failed to appear in Bellefonte on the day agreed upon, Schaeffer drove out into the country, a distance of several miles, to tender performance of his part of the agreement in order to exercise the option. It is also found as a fact that Coldren had agreed to accept the certified check as part payment of the purchase money and did not insist at any time upon a tender in money. Coldren was away from home and Schaeffer was thus prevented from tendering the check and serving personal notice on him. He endeavored to ascertain the whereabouts of Coldren and drove to a neighbor's house for the purpose of making inquiry, but without avail. Not being able to find Coldren, he returned to his residence and left the certified check with Mrs. Coldren, who had joined her husband in the agreement, explaining to her that he was ready to consummate the purchase according to the terms agreed upon, and that he was there for that purpose. Schaeffer returned to Bellefonte late in the afternoon, without being able to find Coldren to make a tender or serve notice upon him in person. He then concluded that he would take no chances as to a possible controversy with Coldren upon the question of the modified terms of payment, and that he would return to his residence and tender payment of the purchase money in full according to the original agreement. He secured another certified check for the balance of the purchase money, less a sum sufficient to satisfy a mortgage upon the property, which Coldren had agreed should be paid out of the proceeds. He again drove out to the home of Coldren for the purpose of making a tender for the full amount of the purchase money and thus serve notice of his election to exercise the option. When he arrived the house was dark, and the family apparently in bed. He knocked at the door, made noise and called loudly in order to attract the attention of Coldren, who either did not hear, or would not respond. After making all possible efforts to tender the check and serve notice on Coldren he drove

away. This occurred on Saturday night, the last day for exercising the option. On the following Monday morning Schaeffer again returned to the residence of Coldren and notified him in person of all he had done on the Saturday previous in making an effort to exercise the option and tender the purchase price. He then renewed his tender of a certified check for the entire balance of the $8,000, less a sum sufficient to satisfy the mortgage, and notified him that he had left the other certified check for $2,500 with Mrs. Coldren when he called on Saturday. Coldren refused to accept the check so tendered, or to do anything else looking to a consummation of the transaction until he had consulted counsel. He made no objection to the form of the tender, or to the certified checks, nor did he offer at that time to return the certified check for $2,500 left with his wife on the previous Saturday. Five days later Coldren, through his attorney, returned the certified check for $2,500 and other papers to Schaeffer, stating that the option had not been exercised according to its terms and had expired by limitation. All of these facts were found by the chancellor, who decreed specific performance.

Appellant asks a reversal upon the ground that the option was not exercised within the time specified, and according to the terms of the agreement. This position is technical in the extreme and looks to the form rather than the substance of the transaction. If Coldren agreed to the modified terms of payment, as the chancellor found he did, and thus misled Schaeffer in exercising his rights under the option, he would be estopped from setting up his own bad faith as a defense in a proceeding instituted to enforce the contract. It would be most inequitable and unjust to permit one party to a contract to mislead the other party, by agreeing to a modification of the terms of payment, and then at the last moment, when it was too late to make other arrangements, refuse to accept the terms agreed upon and

thus defeat the right to exercise the option. Such a course of dealing would make the rights of parties under a contract depend upon a hide and seek game of chance, which equity will not tolerate. But aside from all questions relating to the modified terms of payment, what was done by Schaeffer at the last moment, when he found that he was being misled by Coldren, was a sufficient notice and tender of performance to protect his rights under the original agreement. Under the circumstances he was fully warranted in returning to the residence of Coldren at night on the last day for exercising the option, prepared to tender the purchase money in full. He did everything that could be reasonably expected of him in serving notice of his election to exercise the option, and in making tender of the purchase money. That he did not succeed was not his fault, but the fault of Coldren, who, for purposes of his own, was attempting to evade performance of his part of the contract. Schaeffer showed his good faith by renewing the tender the next Monday morning and by following it up when the case came on for hearing in the court below. We are all of opinion that under the facts of this case Schaeffer made a sufficient tender of performance within the time specified to exercise his rights under the original optional agreement, and that he was entitled to have that written contract specifically enforced in a court of equity. It has been frequently held that acts insufficient in themselves to make a complete tender, may operate as proof of readiness to perform, so as to protect the rights of a party under a contract, where a proper tender is made impossible by reason of circumstances not due to the fault of the tenderer: 29 Am. & English Ency. of Law (2nd Ed.) 697; Case v. Green, 5 Watts 262; Haupt v. Unger, 222 Pa. 439.

It is also objected that the tender of certified checks was not a valid legal tender within the meaning of the law. It is true it was not a legal tender in money, but it has been frequently held that objection to the medium

in which the tender is made may be waived. If no objection be made on the ground that it is not lawful money, a certificate of deposit is a sufficient tender. So, too, if a check be tendered by a debtor who has sufficient money in bank to pay it, and the creditor refuses to receive it for some other reason, but not because it is a check, the tender is valid: 28 Am. & English Ency. of Law (2nd Ed.) 26; Pershing v. Feinberg, 203 Pa. 144. See also Tiernan v. Roland, 15 Pa. 429. Something is said about the effect and manner of the certification of the checks in the present case. In view of the finding of the court below, that Coldren agreed to accept a certified check, and made no objection to the tender on this ground, it is not material to this controversy how it was certified.

It is also urged that the learned court below erred in directing the decree to be entered nunc pro tunc as of the day when the case was submitted for decision after final argument. After final hearing and argument, but before filing the opinion, Coldren, one of the defendants, died. The court upon request directed the decree to be entered nunc pro tunc as of the date of the argument. The general rule is that the death of either party operates as an abatement of the suit, or a suspension of the proceeding, until it is properly revived. This general rule, however, is subject to a very important exception, and the case at bar is within that exception. Where a plaintiff or defendant dies after final argument, but before the entry of the decree, the court may direct the decree to be entered as of a date prior to the death of the party. This is almost universally recognized as proper practice: 2 Daniel's Chancery (4th Am. Ed.) 1544; 5 Ency. of Pleading and Practice, 968; Mitchell v. Overhan, 103 U. S. 62; Gunderman v. Gunnison, 39 Mich. 315; Vroom v. Ditmas, 5 Paige (N. Y.) 528; Griffith v. Ogle, 1 Binn. 172. Numerous other cases could be cited to the same effect. It may be stated as a general rule that a nunc pro tunc order may always

be made when the delay has arisen from the act of the court and has not been occasioned by the parties. After a careful examination of the record we find no substantial merit in the contention that the equity rules were disregarded in not entering a decree nisi and in what followed when the final decree was entered nunc pro tunc. The record shows that there was substantial compliance with all of these rules, and that the objections are not only technical, but without merit, as disclosed by the facts.

In view of what has been said at the beginning of this opinion, the first assignment of error must be sustained, and the bill dismissed as to Warfield, Harris and the American Lime and Stone Company. The plaintiffs having improperly included these defendants in the bill should pay their costs, and it is so ordered. Those parts of the decree that relate to these defendants against whom the bill has been dismissed must also be excluded. The decree as it affects the remaining parties and as it relates to the specific performance of the original agreement should be and is affirmed.

Decree modified so as to exclude clauses 2 and 3, and as modified, it is affirmed. Costs of Warfield, Harris and the American Lime and Stone Company to be paid by appellees, and all other costs to be paid by the remaining appellants.