**Miller v. DeSzirmay**

*Finan, Beecher, Wagner & Rose*, for plaintiff.

*Mark B. Weber*, for defendant.

WILLIAMS, P. J., December 30, 1971.—This peti-

tion and rule to vacate two decrees, hitherto made by this court sitting in equity, represents a challenge to the jurisdiction of the court to make the decrees and is based upon a long and complex factual history. Therein, the preeminent incident is the fact that William Z. DeSzirmay died on March 29, 1960, in the midst of pending but unresolved litigation.

At that time, Mr. DeSzirmay was joint defendant with his wife, Melania DeSzirmay, in an equity action brought on June 23, 1955, in this court by plaintiff, Lewis E. Miller, for the specific enforcement of an alleged contract to sell certain real estate located in Milford Township, Pike County, Pa. Pleadings had been filed, the testimony of the parties had been taken at a hearing before the court on July 31, 1957, and the transcript of the testimony had been lodged on May 27, 1958. On March 8, 1960, John J. Pentz, Jr., Esq., of the Monroe County bar, and Robert J. Kayton, Esq., of the Pike County bar, entered their appearances for defendants, replacing Eli T. Connor, Esq., no longer a member of the Pike County bar, who had represented defendants at the hearing. They prepared and filed with the court their request for findings of fact and conclusions of law on behalf of defendants. Later, the court granted Mr. Pentz and Mr. Kayton permission to withdraw their representation of defendants on February 20, 1961. As a result of a petition filed by plaintiff on June 22, 1961, in the Orphans' Court of Pike County, Dorothy Stroh Tisdale, an attorney, was appointed administratrix of the Estate of William Z. DeSzirmay, deceased. She was replaced, after resignation, by decdent's widow, Melania DeSzirmay, who was appointed administratrix on February 20, 1962.

Pursuant to a rule to show cause entered by plaintiff on July 25, 1962, the court, on October 2, 1962,

ordered that Melania DeSzirmay, administratrix, be substituted for William Z. DeSzirmay as a party defendant. Thereafter, the case was placed upon the argument list for November 19, 1962, by an order, a certified copy of which was served by the sheriff on October 16, 1962, upon Melania DeSzirmay, individually and as administratrix of the Estate of William Z. DeSzirmay, deceased. At the November argument court, Mrs. DeSzirmay appeared without counsel and unprepared to go on with the case. The court instructed her to obtain counsel, and continued the case until the third Monday (the 17th) of December to enable her to do so. On December 11, 1962, the court received a written communication from Mrs. DeSzirmay saying that she was 78 years old and not well, and requesting that the argument be continued until late in the spring. On December 13, 1962, John F. Finan, Esq., and Robert A. Miller, Esq., entered their appearances for plaintiff, taking the place of Karl A. Wagner, Esq., who died on November 21, 1962. In January 1963, President Judge Fred W. Davis suffered an accident which obliged him to remain away from his office for more than three months. Although approximately 10 months had elapsed since Mrs. DeSzirmay's last request to allow time to obtain counsel, no appearance for her had been entered. The court, after full consideration of the request for findings of fact and conclusions of law and the brief filed by Mr. Pentz and Mr. Kayton, while they still were counsel for defendants, then filed an adjudication dated October 21, 1963, containing a decree nisi which directed defendant, Melania DeSzirmay, individually and as administratrix of the Estate of William Z. DeSzirmay, deceased, within 10 days, to execute and deliver to plaintiff, Lewis E. Miller, a deed for the premises, upon payment by plaintiff of $4,725,

the balance of the purchase price. The prothonotary sent a copy thereof to defendant by registered mail on October 22, 1963. On November 18, 1963, no exceptions having been filed of record, the decree nisi was made absolute. When defendant failed to comply with the decree, plaintiff sent defendant, by certified mail, on December 10, 1963, notice of intention to apply to the court on December 16, 1963, for an order directing the prothonotary to execute and deliver the deed which defendant had failed to render. Accordingly, plaintiff's petition was presented to the court on December 16, 1963, and on the same day, the court made an order directing the prothonotary to execute, acknowledge and deliver to plaintiff such a deed. The prothonotary complied with the order, and the deed dated December 23, 1963, from Edward S. Parsons, Prothonotary, to Lewis E. Miller, was recorded in the Office of the Recorder of Deeds of Pike County in Deed Book Vol. 181, p. 413.

On November 17, 1965, almost two years after the decree nisi had become final, defendant, Melania DeSzirmay, ostensibly acting propria persona, filed a petition requesting the court, inter alia, to declare the judgment void, to strike the judgment from the record, and to direct the reconveyance of the premises. In this petition, which contained 108 paragraphs, defendant alleged for the first time: "34. That the Court of Common Pleas had no jurisdiction to decree specific performance of decedent's contract in the above cause of action." On December 20, 1965, defendant filed a petition supplementary to the petition of November 17, 1965. Both petitions referred to exhibits said to be attached to the original petition. In fact, no exhibits were attached to either petition. Plaintiff filed no answer to the petition and its supplement, but on December 30, 1965, moved the

court to quash and dismiss the petition to vacate judgment for the following reasons:

"1. That the time for an appeal in the above-captioned case expired more than twenty-one (21) months ago;

"2. That the rights of numerous third parties have intervened since entry of the decree in the above-captioned case;

"3. That nothing is set forth in the defendants' petition which would require a different result in the above-captioned case or which would have caused the Court to enter a different decree;

"4. That the above-captioned action is res judicata."

The same day, the court entered an order which read:

"And now, this 20th day of December, 1965, upon motion by the Attorney for the Plaintiff, and for the reasons set forth therein, the Defendants' Petition to Vacate Judgment in the above captioned case is refused, and the same is quashed and dismissed."

On January 17, 1966, defendant filed a petition to reconsider the petition to vacate judgment. The docket entries do not indicate what disposition was made. Defendant took two appeals to the Supreme Court of Pennsylvania. In the first of these (entered to January term, 1966, no. 266), certiorari was filed in the Court of Common Pleas of Pike County on February 3, 1966; in the second (entered to January term, 1967, no. 9), certiorari was filed there on April 6, 1966.

With relation to the appeals, President Judge Fred W. Davis filed an opinion dated November 23, 1966, where he said, inter alia:

"On November 17, 1965, the defendants presented a petition, containing 108 numbered paragraphs,

praying the Court to vacate the judgment previously entered. After considering the voluminous petition, we found nothing of merit in it, and therefore, on motion of the Attorney for the Plaintiff, the Petition was dismissed without opinion. The defendants appealed to the Supreme Court of Pennsylvania.

"We fail to find any provisions in the law or Rules of Civil Procedure that authorizes the procedure adopted in this matter. No exceptions were taken to the adjudication and decree nisi, no appeal from the final decree was filed within the statutory period, and therefore, at this point the litigation which had been pending for eight years was finally concluded: Ladner et al. v. Siegel (No. 4), 298 Pa. 487, 494; Raefele v. Davis, 373 Pa. 34."

On December 20, 1966, these appeals were withdrawn and discontinued. The certificates of the Supreme Court that the appeals entered to January term, 1966, no. 226, and January term, 1967, no. 9, had been discontinued were received and filed on January 3, 1967, by the Prothonotary of the Court of Common Pleas of Pike County.

The instant petition and rule to vacate judgment was filed on June 15, 1970. The essence of it is found in paragraph 11, alleging that this court of common pleas, sitting in equity, was *without jurisdiction* to enter the orders dated October 21, 1963, and December 16, 1963, for two principal reasons: (A) That one party defendant, William Z. DeSzirmay, died on March 29, 1960, more than three years before the date of said orders; and (D) that the orphans' court has *exclusive* jurisdiction to enforce contracts for the conveyance of land made by decedents. A third reason (c) that the administratrix, with obvious reference to Dorothy Stroh Tisdale, Esq., who resigned, was improperly appointed on *plaintiff's* petition, is

irrelevant because defendant, who succeeded Mrs. Tisdale, was appointed administratrix on February 20, 1962, pursuant to *her own* petition. The fourth reason (B) That the administratrix was appointed more than five years after the date of the alleged contract and more than one year following decedent's death also will be irrelevant unless defendant can establish that decedent's death rendered nugatory the equity proceeding which already had been initiated while decedent still was alive. Plaintiff's answer, under "New Matter" contains an averment that the issue of jurisdiction is res judicata because it was raised by defendant twice before and determined adversely to her: (a) in paragraph 34 of the November 17, 1965, petition to vacate judgment (paragraph 13); and again (b) in paragraph 11 of her petition to reinstate appeal filed in the Supreme Court (paragraph 12). In addition, plaintiff avers that on or about November, 1968, defendant filed in the Orphans' Court of Pike County, against plaintiff, Lewis E. Miller, a citation to compel return of decedent's realty wrongfully transferred, and urges that the instant petition should be dismissed on the ground of lis pendens (paragraph 14). In defendant's reply to new matter, she asserts that the issue of jurisdiction, concededly raised, was never specifically adjudicated on the merits.

A survey of the pleadings reveals two basic questions: (1) Does defendant have the right *at this time* to challenge the jurisdiction of this court to make the orders dated October 21, 1963, and December 16, 1963? (2) Where the instant equity action against two defendants for the specific performance of their joint contract to convey real estate was pending in this court, did the death of one defendant terminate the jurisdiction of the court and preclude the entry

thereafter of a valid decree of specific performance, notwithstanding that the personal representative of decedent had been substituted as a party defendant in his place?

## THE RIGHT TO CHALLENGE JURISDICTION

Counsel for plaintiff advance two restrictive theories: *lis pendens* and *res judicata*. Under the first of these, it is asserted that consideration of the instant petition filed on June 15, 1970, must be deferred pending the determination of defendant's citation to compel return of decedent's realty previously filed in the Orphans' Court in November 1968, and still unresolved. This proposition is without merit because the general rule as to the pendency of a prior action being ground for the abatement of a subsequent action ordinarily applies only where both the prior and the subsequent proceedings are actions or suits in a court of justice, and not where both or either of them is merely a further or ancillary proceeding in the original action: 1 C.J.S., Abatement and Revival, sec. 24, pp. 55, 56. The pendency of an action will not abate a motion or other ancillary proceeding in a prior suit: 1 C.J.S., Abatement and Revival, sec. 46, page 76. In the instant case, the original action in equity, to which defendant's petition to vacate bears an ancillary relationship, was instituted on June 23, 1955, thus antedating the Orphans' Court proceeding by over 13 years.

The second principle invoked has been stated recently in the case of Stevenson v. Silverman, 417 Pa. 187, 190, 191, 208 A.2d 786, 787, 789 (1965), cert. denied 382 U.S. 833, 86 S. Ct. 76, 15 L. Ed. 2d 76 (1965), where Mr. Justice Eagen said:

"For the doctine of res judicata to prevail, there must be a concurrence of four conditions: (1) Identity in the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued: Burke v. Pittsburgh Limestone Corporation, 375 Pa. 390, 100 A.2d 595 (1953), and Fisher Building Permit Case, 355 Pa. 364, 49 A.2d 626 (1946) . . . A final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or *their privies* on the same cause of action: Goldstein v. Ahrens, 379 Pa. 330, 108 A.2d 693 (1954); Burke v. Pittsburgh Limestone Corporation, supra; Loughran v. Matylewicz, 367 Pa. 593, 81 A.2d 879 (1951); and Central Pa. Lumber Co. v. Carter, 348 Pa. 429, 35 A.2d 282 (1944). As stated in Goldstein v. Ahrens, 379 Pa. at 334, 108 A.2d at 695: 'When a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered and not reversed on appeal is, as between the parties to the suit *and their privies,* final and conclusive with regard to every fact which might properly be considered in reaching a judicial determination and with regard to all points of law adjudged as those facts and points of law relate directly to the cause of action in litigation.' (Emphasis supplied)."

Since by the terms of this statement the principle of res judicata applies only to determinations made by courts of competent jurisdiction, it is not available to plaintiff in the instant case because, here, the jurisdiction of this court is the very issue in dispute. Absence of jurisdiction over the subject matter renders void any judgment of a court relevant thereto. It is a defect of such fundamental character that it may be raised in any court, and at any time prior

to an adjudication of that specific issue by an appellate court of last resort.

See Balazick v. Dunkard-Bobtown Municipal Authority, 414 Pa. 182, 184, 185, 199 A.2d 430, 431, 432 (1964), where the Supreme Court, sua sponte, dismissed a complaint in equity without considering the merits to which the lower court had devoted its entire attention, and Mr. Justice Jones said:

"The equity action, which is the subject matter of this appeal, challenges the right of the Authority to acquire, under the exercise of its power of eminent domain, this sewage system. After an examination of the instant record we deem it unnecessary to determine this appeal upon the merits thereof because it is obvious that the court below lacked jurisdiction to entertain this action in equity. . .

"Although raised but not decided in the court below, the question of jurisdiction is properly before us. Jurisdiction can be raised at any time, even at the appellate level and by the appellate court itself: Johnstone v. Fritz, 159 Pa. 378, 379, 28 A. 148; Thomas v. Johnson, 356 Pa. 570, 52 A.2d 663; Trout v. Lukey, 402 Pa. 123, 126, 166 A.2d 654.

"For lack of jurisdiction in equity, the instant complaint must be dismissed."

Moreover, jurisdiction over a cause of action or the subject matter of an action cannot be conferred by the agreement or consent of the parties: See Papencordt v. Masterwork Paint Co., 412 Pa. 508, 511, 194 A.2d 878 (1963); Brenner v. Sukenik, 410 Pa. 324, 328, 189 A.2d 246 (1963); McGinley v. Scott, 401 Pa. 310, 316, 164 A.2d 424 (1960).

In the instant case, it would be anomalous to hold that defendant, through her negative conduct or laches, in failing to raise the jurisdictional issue promptly and in failing to prosecute her appeal ex-

peditiously in the Supreme Court, conferred upon the challenged decrees a validity which she was incapable, under the law, of conferring by positive and deliberate consent.

The right to challenge jurisdiction of the subject matter is not, however, as counsel for plaintiff correctly contends, completely without restriction. When a particular issue has been determined in a prior appeal of the same case, that determination becomes conclusive, as *the law of the case,* and cannot be relitigated in a subsequent appeal. See Commonwealth v. Tick, Inc., et al., 431 Pa. 420, 427, 246 A.2d 424, 427 (1968).

In the instant case, there never was any adjudication of the jurisdictional issue by the Supreme Court, since defendant discontinued the appeal which she had taken, and later was unsuccessful in her application for reinstatement of the appeal. The situation is comparable to that in Williams v. Murdoch et al., 330 F.2d 745, 755 (3d Cir., 1964), where Chief Judge Biggs said:

"In any event, since the Supreme Court filed no opinion, we cannot tell with exactitude the reason why it dismissed and quashed Mrs. Williams' petition, but we think it clear that it did not adjudicate the matters contained in the petition. The plea of res judicata cannot be sustained upon the action taken by the Supreme Court of Pennsylvania complained of by Mrs. Williams."

Since there never was any adjudication of the jurisdictional issue determined by the Supreme Court, the plea of res judicata is without merit.

## THE JURISDICTION OF THE COURT

Counsel for defendant asserts that the death of defendant William Z. DeSzirmay on March 29, 1960,

had the effect of terminating the jurisdiction which the Court of Common Pleas of Pike County then had over the pending equity action, with the result that the court was without power to enter a valid decree nisi on October 21, 1963, or to permit that decree to become final on November 18, 1963. This assertion is based upon the provision of section 301(9) of the Orphans' Court Act of August 10, 1951, P.L. 1163, 20 PS §2080.301 (9), which reads:

"Section 301. Exclusive Jurisdiction

"The orphans' court shall have exclusive jurisdiction of: . . .

"(9) Specific performance of contracts. To enforce specifically the performance by either party of any agreement made by a decedent to purchase or sell real or personal property."

Subparagraph 9 is silent as to what effect it may have upon jurisdiction already acquired by other courts in pending actions against hitherto living defendants. To assert that, because section 301 (9) of the Orphans' Court Act of 1951, supra, gives the orphans' courts exclusive jurisdiction over the specific enforcement of decedents' contracts, said section impliedly ousts the jurisdiction of the common pleas already acquired while decedent was still living, directly violates section 58(7) of the Statutory Construction Act of May 28, 1937, P.L. 1019, 46 PS §558 (7), which provides:

"All provisions of a law of the classes hereafter enumerated shall be *strictly* construed: . . .

"(7) Provisions decreasing the jurisdiction of a court of record." (Italics supplied.)

This section was cited and approved in Commonwealth v. Barfod et al., 160 Pa. Superior Ct. 59, 64, where Judge Reno said:

"Only upon the showing of a clear legislative man-

date will courts hold that subsequent legislation decreases the existing jurisdiction of a court of record."

Since section 301(9) of the Orphans' Court Act of 1951 is silent on what effect the legislature intended subparagraph 9 to have upon jurisdiction already acquired by another court against a decedent while living, the rule that the statute decreasing the jurisdiction of a court be strictly construed requires us to conclude that subparagraph 9 of section 301 of the Orphans' Court Act does not oust common pleas jurisdiction acquired over decedent in his lifetime.

Our conclusion that the death of Mr. DeSzirmay did not oust the jurisdiction of the court of common pleas is supported by the provisions of the Fiduciaries Act of April 18, 1949, P. L. 512, sec. 601, 20 PS §320.601:

"Actions which survive

"*All causes of action or proceedings, real or personal,* except actions for slander or libel, *shall survive* the death of the plaintiff or of the defendant, *or the death of one or more joint plaintiffs or defendants.*" (Italics supplied.)

The death of defendant William Z. DeSzirmay did not have the effect of terminating the equity action in the Court of Common Pleas of Pike County, thereby ousting the jurisdiction of this court for the reason that by the express provision of section 601 of the Fiduciaries Act of 1949, supra, *all proceedings, real or personal,* except libel and slander, survive the death of a party.

There is a dearth of case law on the precise point. Extensive search has revealed only a single decision which gives color to defendant's thesis: Brady et al. v. Shisler, 1 W.N.C. 97 (C. P. Phila. Co., 1874). There, an original bill in equity for the specific

performance of a contract to sell real estate had been filed on July 12, 1871. A decree was entered in February 1872, granting the prayers of the bill. Defendant Shisler appealed to the Supreme Court. *He died pending the appeal,* and on October 28, 1873, his death was suggested on the record by counsel and the administratrix (his widow) was substituted as party defendant. For some unexplained reason, *the substitution was not brought to the attention of the Supreme Court.* In February 1874, that court affirmed, with a slight modification, the decree directing defendant, Isaac M. Shisler, to execute a conveyance of the lot in question. Counsel, instead of applying to the Supreme Court for a correction of the order, filed an *amended bill* in the lower court. This bill was dismissed by President Judge Allison. His opinion is not printed verbatim, but is paraphrased in the language of the reporter:

". . . The question raised by the answer to the amended bill was really whether this Court could now proceed to make a decree against the widow as administratrix, and as a party interested, as well as the minors, or whether, under the Act of 15th Feb. 1834 (supra), this suit abated in this court, by the death of defendant, and the only forum capable of carrying out decedent's contract was the Orphans' Court. It was true that in many cases specific performance might be obtained in the Orphans' Court under its general equity powers, and also in this court. But there was a well-established distinction as to such cases as to the present. A decision of the Supreme Court on this question might be obtained by an order from that court, taking up the record there again, and then a proper application there to bring in the proper parties to a final decree, viz., the widow and the minors. This would settle the question of ju-

risdiction. But this was now a question between the plaintiff and the heirs of defendant, as well as his widow, who had a right of dower, and the case seemed to be exclusively within the jurisdiction of the Orphans' Court . . ."

The persuasive weight of Brady et al. v. Shisler is diminished by the failure of the court there to undertake any definitive analysis and application of the Act of 1834, sec. 27, P. L. 70, which provided:

"Section 27. The *court in which any action or legal proceeding may be depending* as aforesaid, shall have power to require, by a writ of *scire facias* [Italics in original text], such executors or administrators . . . to become party to such action or proceeding, or to show cause . . . why they should not be made party thereto, by the judgment of the court, and further proceedings be had *in such action or proceeding* . . ." (Italics supplied.)

In support of the assertion that the death of William Z. DeSzirmay terminated the jurisdiction of the court of common pleas, counsel for defendant has cited Bidelman Estate, 360 Pa. 195, 199, 200, 61 A. 2d 355, 357 (1948). There, the corporate guardian of an incompetent, appointed by the court of common pleas, obtained the court's approval of an agreement for the sale of the ward's real estate to the ward's daughter and her husband for $6,380 and received a down payment of $200. Fourteen days after the order of sale was entered, the ward died. The balance of the purchase price had not been paid and no conveyance had been made by the guardian, which then filed its account in the court of common pleas, showing assets of $200 and unpaid claims aggregating $1,318.78. The court confirmed the account, awarded the $200 to the daughter as executrix of the estate of the ward, and transferred the unpaid claims

to decedent's estate. Under decedent's will, the daughter was given the option to purchase the same real estate for $4,000. The daughter obtained a rule, in the court of common pleas, to show cause why the order of sale should not be annulled because the ward had died before the sale was consummated. The court discharged the rule and held that the order, based on a valid contract, was valid when made; that the powers of the guardian ceased upon the death of the ward; but that such powers and duties then passed to the executrix of the ward's estate. The daughter then petitioned the orphans' court for a decree awarding her the real estate under section 33(f) of the Fiduciaries Act of 1917. The petition was denied and, on appeal, the Supreme Court affirmed. Mr. Justice Stearne said:

"We therefore have a decision of the court of common pleas, unappealed from, that a binding and enforceable contract had been entered into by the guardian of the incompetent with appellant *and her husband,* but that the enforcement of such contract was now under the jurisdiction of the orphans' court. With this we agree. When the ward died the guardian's right to seek enforcement of the contract ceased. Liability under the contract, however, did not terminate. Exclusive jurisdiction for the enforcement of the contract was thereafter in the orphans' court: Fiduciaries Act of June 7, 1917, P. L. 447, sec. 18 (b), 20 PS §612; Gable v. Whiteside, 242 Pa. 188, 88 A. 931; Cardon's Estate, 278 Pa. 153, 122 A. 234; Bell et al. v. Bell, 287 Pa. 269, 135 A. 219; Mellinger's Estate, 334 Pa. 180, 5 A. 2d 321; Manzer v. Wycoff and Wycoff, 78 Pa. Superior Ct. 560."

This decision is not apposite to a case where, as here, the contract of sale has been made, not by the guardian of an incompetent, but by a living party in

full possession of his faculties. For such a case, section 35(a) and (f) of the Fiduciaries Act of 1917, then provided, and section 601 of the Fiduciaries Act of 1949, supra, now provides, for the survival of the pending proceeding against the personal representatives of the decedent.

On the other hand, there are a number of decisions which sustain the proposition that the jurisdiction of a court of common pleas over a pending action for specific performance of a contract to sell real estate is not terminated by the death of a party prior to final determination of the action. In Schaeffer, to use, v. Coldren et al., 237 Pa. 77, 85, 86, 85 Atl. 98, 100 (1912), the Supreme Court affirmed a decree directing the specific performance of a contract to sell real estate which had been entered *nunc pro tunc* as of the date of submission, where one of the defendants had died after final hearing and argument, but before the determination of the case. Mr. Justice Elkin said:

"It is also urged that the learned court below erred in directing the decree to be entered nunc pro tunc as of the day when the case was submitted after final argument. After final hearing and argument, but before filing the opinion, Coldren, one of the defendants, died. The court upon request directed the decree to be entered nunc pro tunc as of the date of the argument. The general rule is that the death of either party operates as an abatement of the suit, or a suspension of the proceeding, until it is properly revived. This general rule, however, is subject to a very important exception, and the case at bar is within that exception. Where a plaintiff or defendant dies after final argument, but before the entry of the decree, the court may direct the decree to be entered as of a date prior to the death of the party. This is

almost universally recognized as proper practice: 2 Daniel's Chancery (4th Am. Ed.) 1544; 5 Ency. of Pleading and Practice, 968; Mitchell v. Overhan, 103 U.S. 62; Gunderman v. Gunnison, 39 Mich. 315; Vroom v. Ditmas, 5 Paige (N.Y.) 528; Griffith v. Ogle, 1 Binn. 172. Numerous other cases could be cited to the same effect. It may be stated as a general rule that a nunc pro tunc order may always be made when the delay has arisen from the act of the court and has not been occasioned by the parties . . ."

This decision is directly relevant to the instant case for, here, during the lives of both defendants, the hearing on the merits of the bill, at which each of them appeared personally and testified, was held on July 31, 1957; the appearances of John J. Pentz, Esq., and Robert J. Kayton, Esq., as counsel for defendants were entered on March 8, 1960; and their request for findings of fact and conclusions of law in behalf of both defendants were received by the court on March 10, 1960. The death of defendant, William Z. DeSzirmay, did not occur until March 29, 1960. This court did not enter an order nunc pro tunc as it might have done under the authority of Schaeffer, but awaited revival of the proceeding by the substitution of the administratrix as party-defendant in the place of William Z. DeSzirmay, deceased, before entering the adjudication dated October 31, 1963. A fortiori, this adjudication was made without loss of jurisdiction.

Another decision sustaining the entry of judgment nunc pro tunc after the death of a party is found in Stilwell v. Smith, 219 Pa. 36, 67 Atl. 910 (1907), where plaintiff brought assumpsit in Pennsylvania against the executors of a decedent on a judgment which he had obtained against their decedent in Arizona. At trial, the court admitted in evidence the record of the

Arizona proceeding over the objection by counsel for defendants that the Arizona court lost its jurisdiction to enter a valid judgment because the defendant there died before judgment and while the case still was under advisement. The record showed that defendant had appeared at the trial before a judge sitting without a jury. On April 2, 1903, the evidence being closed, argument of counsel followed, and the court reserved the decision for a future day. Defendant died on April 12th and his death was suggested of record on April 17th. No regular personal representatives then qualified, but a special administrator, appointed by the probate court, was present at a hearing on May 18th when the trial court directed that judgment for $3,000 with interest and costs be entered against defendant nunc pro tunc as of April 2, 1903, the date of submission of the case. The Supreme Court of Pennsylvania held that the Arizona court did not lose jurisdiction by reason of defendant's death prior to judgment, and affirmed the judgment of the lower Pennsylvania court in favor of plaintiff. To these authorities, a third may be added. The survival of an equitable *action* in common pleas, as dependent under the Fiduciaries Act of 1917 upon the survival of the substantive *cause of action* for specific performance, is clearly demonstrated in a case where three interested parties died, one after the other, while the initial action was pending in the court of common pleas: Sippy et al. v. Colter et al., 347 Pa. 1, 6, 7, 31 A. 2d 734, 737 (1943). There, Mrs. Sippy had conveyed real estate to Colter by a deed of trust, the terms of which required him to convey the whole of any part of it to such person or persons as the settlor, by writing under her hand and seal, might direct. Colter refused to honor Mrs. Sippy's direction to convey one of the parcels to Marvin,

and she brought an action in equity to compel him to do so. Mrs. Sippy died on December 15, 1937, and later her executor was substituted as party-plaintiff. Marvin died, and his executor was permitted to intervene as party plaintiff. Colter died, and his executor and heirs at law were substituted as parties-defendant. After all these substitutions had been made, the court of common pleas entered a decree directing specific performance which the Supreme Court affirmed. Mr. Justice Parker said:

"What we have heretofore said is a sufficient answer to the first contention of the appellants that its original motion after the death of Mrs. Sippy to dismiss the bill on the ground that the cause of action did not survive her death, should have been granted. If the cause of action survived, the executor of Mrs. Sippy had the power to prosecute the bill after her death: §35 (f), Act of June 7, 1917, P. L. 447, as amended (20 PS 776). It was the right of Marvin to a transfer of the legal title to the premises for which he had an equitable title that was the primary basis of the issue and Mrs. Sippy sought to enforce that right as a donor. In her lifetime she sought, as donor, to secure performance by the trustee of a right which she had reserved in her deed of trust. Her death did not terminate the right and her executors were empowered by statute to continue the assertion of that right *in the same action*. Not only so, but the representative of Marvin intervened in the same action. The right of action survived."

## ORDER

And now, December 30, 1971, the petition of defendant to vacate the decrees of October 21, 1963, and December 16, 1963, is dismissed.

## OPINION AND ORDER

WILLIAMS, P. J., June 27, 1972.—On December 30, 1971, this court dismissed the petition of Melania De-Szirmay to vacate two prior decrees, dated October 21, 1963, and December 16, 1963, thereby necessarily discharging the rule to show cause which was based upon it. Petitioner was permitted, against plaintiff's opposition grounded upon lis pendens and res judicata, to challenge the extended jurisdiction of the court of common pleas over the subject matter of this equity action after the death of defendant, William Z. DeSzirmay on March 29, 1960. That issue was determined against her. Counsel for petitioner now has obtained a rule to show cause why the case should not be submitted for reargument, or for the reformation of the court's order dated December 30, 1971.

Counsel asserts that, whatever jurisdiction the court of common pleas may have retained after the death of defendant, William DeSzirmay, to adjudicate the validity of the agreement of sale, only the orphans' court possessed the requisite jurisdiction *to enforce* the adjudication. It will be observed that the implementation of a decree granting "specific performance" takes either of two essentially different forms: (a) If defendant is the *vendor,* the decree directs him, or his representative, to execute and deliver a deed of conveyance for the subject real property; or (b) If defendant is the *vendee,* the decree directs him, or his representative, to pay a cash sum, i.e., the purchase price of the property. After the death of defendant, such a cash sum can be recovered only from the fund of decedent's assets existing at the time of his death.

Section 103 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.103, provides that "Legal title

to all personal estate of a decedent shall pass at his death to his personal representative, if any, as of the date of his death"; and section 104, 20 PS §320.104, provides that "Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by this act and lawfully by the will and all orders of the court."

In the instant case, William Z. DeSzirmay is cast in the character of vendor of real estate. By operation of the principle of equitable conversion, beneficial title to the subject real property passed from William Z. DeSzirmay and Melania DeSzirmay, vendors, to plaintiff Lewis E. Miller, vendee, on April 22, 1955, when the agreement of sale was executed. This principle has been stated in Synes Appeal, 401 Pa. 387, 391, 392, 164 A. 2d 221, 223 (1960), where Mr. Justice Eagen said:

"After a contract for the sale of real estate is duly executed, the purchaser is the equitable owner thereof, entitled to all advantages that may thereafter arise, and responsible for all loss that may befall it. This legal principle, recognized early by this court in Reed v. Lukens, 44 Pa. 200 (1863), has remained the law of the Commonwealth. It is based on the familiar maxim that equity regards that as done which has been agreed to be done, and which the parties to the agreement have in their power to do. Hess v. Vinton Colliery Co., 255 Pa. 78, 84, 99 Atl. 218 (1916)."

Again, in Payne v. Clark, 409 Pa. 557, 561, 187 A. 2d 769, 770 (1963), he said:

"From the moment an agreement of sale of real estate is executed and delivered it vests in the grantee what is known as an equitable title to the real estate. See, Ladner on Conveyancing in Pennsyl-

vania, §5:26 (3d ed. 1961). Thereupon the vendor is considered as a trustee of the real estate for the purchaser and the latter becomes a trustee of the balance of the purchase money for the seller: Kerr v. Day, 14 Pa. 112 (1850)."

See also Kaufman et al. v. Mellon National Bank and Trust Company, 366 F. 2d 326, 331 (3d Cir., 1966). The principle was applied recently in Di Donato et ux. v. Reliance Standard Life Insurance Company, 433 Pa. 221, 249 A. 2d 327 (1969), where the Supreme Court held that the risk of a zoning change, enacted without the knowledge of either party after the execution of the agreement of sale, but before settlement, falls upon the purchaser as equitable owner, and not upon the seller. Accordingly, when William Z. DeSzirmay died, he was no longer the equitable owner of the subject real estate. His only remaining interest therein was the right to receive and share with Melania DeSzirmay the balance of the purchase price. This interest was personal property which passed at death to his administratrix, by virtue of section 103 of the Fiduciaries Act, supra, thereby becoming a part of the fund of decedent's assets entrusted exclusively to the Orphans' Court for administration and distribution. On the other hand, the equitable title to the subject real estate did not become a part of this fund because it had been segregated and set apart from decedent's other possessions at the time when the agreement of sale was executed. Notice thereof was given to all the world when the agreement of sale was recorded. The decree of the Court of Common Pleas directing conveyance of the subject real estate and thus uniting the record legal title with the equitable title which had been vested in plaintiff since April 22, 1955, in no way infringed upon the exclusive jurisdiction of

the Orphans' Court to administer and distribute the assets possessed by William Z. DeSzirmay at the time of his death.

Counsel's petition, filed June 15, 1970, was directed to the jurisdiction of the court of common pleas over the *subject* matter of this equity action. Now, in requesting reargument, counsel challenges the jurisdiction of the court over the *person* of petitioner in her capacity as administratrix. Counsel asserts that the caption, used in connection with the order of December 30, 1971, describing defendant as: "Melania DeSzirmay, Individually and as Administratrix of the Estate of William Z. DeSzirmay, deceased," is incorrect because the pleadings have never been formally amended. This amendment, executed without more elaborate formality, reflects the effect of the order of October 2, 1962, which made absolute the rule to substitute Melania DeSzirmay, administratrix of the Estate of William Z. DeSzirmay, deceased, as defendant in place of William Z. DeSzirmay. The substitution has been recognized by petitioner up to the moment of the instant petition for reargument. In her petition, filed November 17, 1965, she averred:

"1. That she was the defendant in those proceedings, individually and as administratrix of the estate of William Z. DeSzirmay, deceased."

Again, in her petition, filed June 15, 1970, she averred:

"1. Petitioner, Melania DeSzirmay, is one of the defendants in the above-captioned matter. Petitioner is also administratrix of the Estate of William Z. DeSzirmay, deceased, the other defendant in this matter."

In this attack upon the order of October 2, 1962, counsel does not deny that petitioner actually was

served with the praecipe and rule to show cause, but asserts that the sheriff's return of service is defective because it (a) is silent as to service of the rule, and recites only that he served "the within praecipe for rule" and (b) fails to recite service on petitioner in her capacity as administratrix, distinct from her capacity as an individual. Examination of the original papers shows that the return is stapled to a manuscript backer which incorporates within it both the praecipe *and* the rule. Inside the opening sentence of the praecipe reads:

"Enter rule on Melania DeSzirmay, *Administratrix of the Estate of William DeSzirmay* to show cause why she should not be substituted as a party defendant in the above captioned action in place and stead of William Z. DeSzirmay." (Italics supplied.)

The sentence is followed by a statement, in numbered paragraphs, of the material facts required by Pennsylvania Rule of Civil Procedure 2352 (b). The rule, following the praecipe, is made returnable to the third Monday (the 17th) of September 1962. It should be noted that such a praecipe, although unsworn, is in the nature of a pleading. See Goodrich-Amram, sec. 2352 (b)-5, where it is said:

"Substantive defenses are not provided for specifically. The moving party does not technically file a 'pleading' against the successor. The praecipe contains 'the material facts' but it is only a praecipe and not sworn to. Yet, if the praecipe is not treated as a pleading, there is no practical way in which substantive issues, such as the fact that the successor is an executor appointed by a foreign court; laches in seeking the joinder; the undesirability of joining the defendant's successor in public office; or the death of the defendant before service, can be raised. Ordinarily, rules to show cause are granted on petition,

and ordinarily the respondent files an answer to the petition. This practice should be incorporated by analogy. The successor should file an answer, even though he is answering under oath a praecipe which is unsworn. On the averments of the praecipe and answer, the issue will be raised on which the court may determine the question of substitution."

In the instant case, petitioner, although concededly served with a copy of the praecipe which informed her clearly of the capacity in which she was served and the factual basis upon which her substitution as a party defendant was sought, filed no answer responsive to the allegations of fact in the praecipe and no preliminary objections to the regularity of service. Counsel has, however, attached to his argument brief a copy of a letter, dated September 15, 1962, (just two days prior to the return date of the rule to show cause), addressed by Melania DeSzirmay to Mr. Edward S. Parsons, Prothonotary, (carbon copy to Judge Fred Davis), in which she opposes the substitution and sets forth 16 numbered paragraphs expressing her views on the merits of the case, as distinguished from the legal propriety of substituting her as a party defendant on the basis of the facts alleged in the praecipe. Also attached is a copy of a Post Office receipt showing delivery of an unidentified item to Fred W. Davis on October 31, 1963. Neither of these exhibits is properly in the record. An argument brief is not an appropriate vehicle for bringing new factual material upon the record because, in the first place, it is not a pleading, and, in the second place, it is not verified by oath. Cf. Biel v. Herman Lowenstein, Inc., 411 Pa. 559, 192 A. 2d 391 (1963); Universal Manufacturing Corporation v. Vulcan Denver Corporation, 277 F. Supp. 385 (W. D. Pa., 1967); Pa. R. C. P. 1017. As the record

stands, it is clear that petitioner has waived the right to challenge the jurisdiction of the court of common pleas over her person in the capacity of administratrix, not only by failing to object to the rule for substitution, but also by her recognition of the substitution, after it was effected, in two subsequent petitions. This conclusion is in accord with Yentzer v. Taylor Wine Co., Inc., 409 Pa. 338, 342, 186 A. 2d 396, 398 (1962), where Mr. Justice Eagen said:

"Pa. R. C. P. 1028(b) provides that all preliminary objections *shall* be raised at one time. Further, *Rule 1032,* provides that a party *waives* all defenses and objections not raised by these preliminary objections except certain specified defenses which are preserved, none of which are relevant here . . . [F]ailure to raise the question of jurisdiction over the subject matter does not result in its waiver because jurisdiction over the subject matter may never be waived: [citing cases]. However, *jurisdiction* over the person, which is the question here involved, is in another category and may be waived if an objection thereto is not timely raised: Ciammaichella Appeal, 369 Pa. 278, 85 A. 2d 406 (1952); Hauger v. Hauger, 376 Pa. 216, 101 A. 2d 632 (1954); Johnson Adoption Case, 399 Pa. 624, 161 A. 2d 358 (1960)."

Counsel asserts that the court, in its opinion filed on December 30, 1971, incorrectly assumed that the original agreement of sale was binding on the heirs and personal representatives of William Z. DeSzirmay, notwithstanding the fact that it contained no express provision to that effect. Petitioner is not entitled to relitigate the merits of the case; but counsel may find the answer to this point in section 620 (a) of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.620(a).

Finally, counsel asserts that an attorney should

have been appointed by the court to serve as her counsel in the capacity of administratrix. In the field of criminal law, the constitutional right of defendants, if indigent, to be supplied with counsel has become well established. The same principle has not, as yet, been extended to the field of civil law. The right of indigent wives to bring suits for divorce in forma pauperis has been established by the Supreme Court of the United States in Boddie et al. v. Connecticut et al. 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). This decision was followed by the Superior Court of Pennsylvania in Wilson v. Wilson, 218 Pa. Superior Ct. 344, 346, 280 A. 2d 665, 666 (1971), but Judge Jacobs said:

"Appellant in his *pro se* brief to this Court asks not only free access to the courts and free service fees, but also asks that he be provided free investigative and legal services. Boddie, of course, makes free access a right; however, there is no obligation to provide investigative and legal services to one seeking a divorce."

In the instant case, petitioner had the assistance of counsel who prepared and submitted to the court requests for findings of fact and conclusions of law which the court duly considered in framing the adjudication. Petitioner had ample time to secure replacements between their withdrawal in February 1961 and October 1963 when the decree nisi was filed. We see no merit to this contention.

## ORDER

And now, June 27, 1972, it is ordered and decreed:

1. The order dated December 30, 1971, is amended to read:

"And now, December 30, 1971, the petition of the defendant to vacate the decrees of October 21, 1963,

and December 16, 1963, is dismissed and the Rule to show cause is discharged."

2. Except as indicated in paragraph 1, supra, the petition of defendant for a rule to show cause why the case should not be submitted for reargument or reformation of the court's order dated December 30, 1971, is dismissed and the rule to show cause is discharged.