ROHROF ET AL. *v.* SCHULTE.

[No. 18,699.  Filed November 28, 1899.  Rehearing denied Feb. 15, 1900.]

APPEAL AND ERROR.—*Harmless Error.*—Where the special finding discloses that it rests upon the facts averred in the second paragraph of complaint, available error cannot be predicated upon the overruling of a demurrer to the first paragraph.  *pp. 184, 185.*

SAME.—*Complaint.*—*Special Findings.*—Where the facts disclosed by the special finding embrace substantially all of the material facts averred in. the complaint, and it can be adjudged that the finding sustains the conclusions of law thereon, the sufficiency of the complaint must be affirmed.  *p. 185.*

FRAUD.—*Vendor and Purchaser.*—*Quieting Title.*—*Special Finding.* —In an action to rescind a contract and quiet title to real estate given in exchange for city lots, the facts found showed that plaintiff employed a real estate agent to negotiate a sale or exchange of his farm for city property; that the agent pointed out certain lots, and informed plaintiff that M., the owner, would exchange them for his farm, and delivered to plaintiff a deed conveying to him certain . described lots, representing that they were the same lots shown him, when in fact the lots described in the deed were situated about three miles further out, in an open prairie, and of much less value than those pointed out; that the agent was the real owner of the lots, and that there was no such person as M.  *Held,* that the facts found justified the conclusion that the conveyance was procured by fraud, and that plaintiff's title to his land was not devested thereby.  *pp. 185–192.*

SAME.—*Vendor and Purchaser.*—A vendor of land, who by false representations deceived a purchaser in respect to its location, will not be permitted, in an action by the purchaser to rescind the sale, to excuse his fraudulent acts by the negligence of the purchaser in not examining some map or record from which he might have ascertained the true location of the land, or in otherwise failing to make an investigation or inquiry by which the falsity of such representations might have been exposed.  *pp. 192, 193.*

CONTRACTS.—*Fraud.*—*Rescission.*—*Return of Consideration.*—In an equitable suit to rescind a contract on account of fraud, it is sufficient for plaintiff to offer in his complaint to restore what he has received, where he acted promptly upon discovering the fraud.  *pp. 193, 194.*

APPEAL AND ERROR.—*Evidence.*—*Bill of Exceptions.*—The acts of 1873 and 1897 (Acts 1873, p. 194, Acts 1897, p. 244) both require that the evidence must be embodied in a proper bill of exceptions before it can be certified to the Supreme Court.  *pp. 195, 196.*

| 154 | 183 |
| 156 | 315 |
| 154 | 188 |
| 160 | 498 |
| 154 | 183 |
| f170 | 506 |

From the Pulaski Circuit Court.    *Affirmed.*

*B. Borders, Wm. Spangler* and *W. W. Borders,* for appellants.

*F. L. Dukes, Cutting, Castle & Williams,* and *George Burson,* for appellee.

JORDAN, J.—This action was originally instituted by the appellee on October 31, 1893, against Monigunda Rohrof, Julius Rohrof, Charles A. Brillo, and one Henry Meiger, to set aside the conveyance of 120 acres of real estate situated in Pulaski county, Indiana, and to quiet title thereto; which conveyance, it was alleged, had·been obtained from appellee through the fraud of appellants.

On July 12, 1895, an amended complaint in two paragraphs was filed. Monigunda and Julius Rohrof separately demurred to each paragraph of this complaint. Their demurrers were each overruled, and they answered by a general denial and also filed a cross-complaint to quiet title to the lands in controversy. There was a trial by the court, a special finding of facts and conclusions of law thereon in favor of appellee, and, over a motion for a new trial, judgment was rendered quieting his title in and to the lands in dispute.

This is a term time appeal and is taken and prosecuted alone by Monigunda and Julius Rohrof. Errors assigned and discussed by appellants' counsel relate, (1) to the sufficiency of each of the paragraphs of the amended complaint; (2) to the sufficiency of the special finding to support the conclusions of law; (3) to the sufficiency of the evidence to sustain the facts found by the court.

The special finding clearly discloses, we think, that it rests upon and responds to the facts averred in the second paragraph of the amended .complaint; consequently a correct decision may be reached upon the facts as stated in the special finding; and, therefore, we need not consider the sufficiency of the first paragraph of the complaint, as, under such circumstances, the ruling on the demurrer thereto

would be harmless. *Smith* v. *Wells Mfg. Co.*, 148 Ind. 333; *Illinois Central R. Co.* v. *Cheek*, 152 Ind. 663.

As the facts disclosed by the special finding embrace substantially all of the material ones averred in the second paragraph of the complaint, it is not essential that we set out the latter in this opinion, for it is evident that, in the event it can be adjudged that the special finding sustains the court's conclusions of law thereon, the sufficiency of the second paragraph of the amended complaint, under the circumstances, must be affirmed.

The following may be said to be the facts found by the court: Appellee, plaintiff below, was the owner of the 120 acres of land described in the complaint, situated in Pulaski county, Indiana; and this land was of the value of $3,000. The defendant, Charles A. Brillo, was a real estate agent in the city of Chicago, Cook county, Illinois. Appellee employed him to sell or exchange the said 120 acres of land for real property situated in the city of Chicago; and he consented to effect the sale or exchange desired by appellee. A few days after accepting this employment, Brillo informed appellee that he knew a person by the name of "Henry Meiger" and that the latter had fourteen lots situated in Morgan Park, a suburb of the city of Chicago; and that Meiger would exchange these lots for appellee's Pulaski county land. A short time after making this proposition to appellee, and before January 11, 1893, he, Brillo, delivered to appellee what purported to be a map of Morgan Park, and indicated thereon the exact location of the fourteen lots proposed to be exchanged by marking with ink the part of the map or plat representing the location of the lots, which were represented on said map to be situated between 107th and 108th streets and Euclid and Blanchard avenues in the said Morgan Park. A few days thereafter, Brillo went with appellee to show him the lots offered for exchange, and pointed out to him eleven lots fronting on Euclid avenue and three lots fronting on Blanchard avenue, between 107th

and 108th streets, in said Morgan Park, as being the iden-
tical fourteen lots which Meiger desired to exchange or trade
for appellee's land. The lots which he pointed out or
showed to the appellee were situated two blocks west of
Western avenue in said Morgan Park, and were each worth
$250 or $300. Appellee was not familiar or acquainted with
the lots, nor with the maps or plats of that part of the city,
and knew nothing in regard to them except what Brillo stated
and represented to him, and he relied upon the representa-
tions of Brillo in respect to the location of these lots and
believed that the latter was giving their true location. On
January 11, 1893, after the above representations had been
made by Brillo to appellee, the latter entered into a written
contract to trade or exchange his land for fourteen lots in
Grove addition to the town of Morgan Park. At the time
appellee signed this contract, he believed that the lots men-
tioned or described therein were the same which Brillo had
shown him, as previously stated. This contract was in dupli-
cate, one of which was signed by appellee and his wife; and
thereby they agreed to convey to "Henrick Meiger" the
land in Pulaski county; and the other part of the contract
purported to have been signed by said Meiger and his wife,
and under it they agreed to convey the fourteen lots in
Grove addition to Morgan Park to appellee in exchange for
his land. This contract and all of the negotiations in respect
to the trade or exchange of the lots for appellee's land were
made and carried on by and between Brillo and appellee,
Meiger at no time being present, and at no time did appel-
lee see him. Brillo, during the transaction, represented to
appellee that Meiger could not be present to take part in the
negotiations, and further represented that he, Meiger, re-
sided in Cummings or South Chicago and that he was em-
ployed at that town in a rolling-mill. After Brillo had
shown appellee the lots in Morgan Park, situated as here-
tofore stated, and before he entered into the written contract
mentioned, Brillo made frequent visits to see him, and

urged him to exchange his land for the lots which he had shown him. After the execution of this contract, Brillo, at his own solicitation, was employed by appellee to examine the abstract of title to the lots described as situated in Grove addition; and thereafter he gave appellee a written opinion that Meiger's title thereto was good, subject only to a mortgage lien of $600 and certain tax liens. Thereafter on February 9, 1893, appellee and his wife, Emma Schulte, relying on the statements and representations so made by Brillo, and believing them to be true, executed a warranty deed conveying the Pulaski county land to said Meiger, and delivered the same to Brillo at his request and also delivered to him the aforesaid contract, and turned over to him the possession of the land in Pulaski county; and thereupon he delivered to appellee a deed, purporting to have been executed by Meiger and wife, conveying to appellee's wife the lots in Grove addition to Morgan Park, subject to a mortgage of $600. Appellee at the same time received from Brillo what purported to be the promissory note of Meiger to appellee for $600, which was in consideration of stock and other personal property owned by appellee and on the land at the time he turned the possession thereof over to Brillo. At the close of the transaction, appellee paid Brillo $85 as a commission for his services in effecting the exchange. At the time of the delivery of the deed of appellee and wife to Brillo, and of the delivery by the latter of Meiger's deed, Brillo represented to appellee that the lots described in Meiger's deed were the same lots which he had pointed out and shown him, as heretofore stated. These representations made by Brillo were false, and, at the time he made them, he knew they were false. From Brillo's representations, statements, and acts, appellee was induced to believe, and did believe, that the deed for the lots delivered to him conveyed the same lots in Morgan Park, situated on Blanchard and Euclid avenues between 107th and 108th streets, and which were but two blocks west of Western avenue of said

Morgan Park. In truth and in fact, however, they were not the same lots; and the ones embraced in the said deed were located about three and one-half miles southwest of the lots pointed out and shown appellee by Brillo and were situated over two miles west of Western avenue of said Morgan Park, out in the open prairie; and, at the time of their exchange for appellee's land were of the value of $33.33, or of the total value of about $466; all of which Brillo well knew at the time he obtained from appellee the written contract and the deed for the land in Pulaski county.

Appellants, Rohrof and Rohrof, are husband and wife, said Monigunda being the sister of the defendant, Brillo; and, at the time the said negotiations were pending, these appellants resided at Cummings or South Chicago, Illinois, and appellant, Julius, was employed in the rolling-mills in that town. These appellants had knowledge of the negotiations that were being had between appellee and Brillo in respect to the exchange of the real estate in controversy. Before the deeds herein mentioned were executed, said Julius, in company with Brillo, went to see the land of appellee, and was introduced by Brillo to the tenant of appellee, then occupying the land, as "Mr. Meiger." It was stated that he desired to "look over the farm."

About the middle of June, 1893, following the transactions between Brillo and appellee, the latter ascertained and discovered the true location of the lots embraced in the Meiger deed, and thereupon he immediately notified Brillo what he had discovered in respect to the location of these lots, and informed him that he desired to rescind the contract and conveyance. Thereupon Brillo informed him that he could do nothing in regard to the matter, and again stated that Meiger was engaged at work in the rolling-mills at Cummings. Appellee then made an offer to Brillo to reconvey the lots in question to Meiger, and offered to return and deliver up to Brillo for Meiger the said note of $600 and the mortgage securing the same; and demanded of Brillo

a rescission of the contract and exchange of the property. The latter declined to accept the deed of reconveyance for the lots, and declined to accept the note and mortgage mentioned; and then stated to appellee that he had no authority to rescind the contract or reconvey to appellee his land. Appellee then made an unsuccessful search to find Meiger, and informed Brillo of this fact; and the latter refused to communicate with Meiger or to make any effort to find him. On June 1, 1893, Brillo delivered to appellant, Mrs. Rohrof, a deed for the Pulaski county land. This deed purported to have been executed by Meiger and wife and purported to have been acknowledged before Brillo, a notary public. This deed was recorded in the recorder's office of Pulaski county, Indiana. There was no consideration whatever for the conveyance of the land in question to appellant, Mrs. Rohrof. After this conveyance, the latter and her husband moved onto the land and took possession thereof. In July, 1895, appellee, being still unable to find Meiger, tendered to Brillo a good and sufficient deed, executed by himself and wife, reconveying the lots in dispute to Meiger, and again offered to deliver to him the $600 note and mortgage, and, at the same time, offered to reconvey the lots in controversy to Brillo or to any other person that the latter might designate, and again demanded a rescission of the contract. Brillo refused to accept this offer or tender, and refused in any manner to rescind the contract or to reconvey to appellee his land.

The court finds that there is no such person as "Henry Meiger" or "Henrick Meiger," and that the names of "Henry Meiger" and "Emma Meiger", purporting to be husband and wife, which were signed to the deed conveying the lots in controversy, were signed thereto by the defendant Brillo, and that he procured persons to represent Meiger and wife in the execution of this deed; and that he was, at the time, the real owner of the lots in question. The court further finds facts disclosing that appellant, Julius

Rohrof and wife, colluded with Brillo in the fraudulent transactions leading up to the conveyance by appellee of his land; and that they permitted themselves to be used by him in furthering his fraudulent scheme to perfect the trade with appellee; and that the deed from appellee for the land in dispute was procured by the means of fraud; and with the fraudulent intent and purpose, upon the part of Brillo, to cheat and defraud appellee; and that the deed purporting to convey said land to Mrs. Rohrof was procured and made in furtherance of the fraudulent purpose by Brillo and said appellants; and it is further found by the court that Brillo and appellants are the only parties that were connected with the transaction leading up to the exchange of the lots and land in controversy; and that they are the real parties interested in the event of this action.

After the filing of the amended complaint, appellee brought into court the deed reconveying the lots to Meiger, and the $600 note and mortgage securing the same; and these papers were placed in the custody of the trial court. The court, upon the facts found, concludes that the conveyance of appellee to Meiger for the land in question, and also the deed from Meiger to the defendant, Monigunda Rohrof, were procured by fraud, and that the plaintiff's title to his land was not devested thereby.

It is true that the trial court has embraced in its special finding some matters of an evidentiary character, still the legitimate facts, as therein set forth, are sufficient to expose that the conveyance of appellee's land which he, by his action, invokes the court by its decree to set aside and annul, was procured through the fraudulent scheme projected by the defendant Brillo, to which his codefendants, appellants herein, appear to have been parties, and aided in the furtherance thereof. The facts reveal such a clear case of fraud, upon the part of the defendant Brillo, and that the conveyance, upon the part of appellee, was procured thereby, that surely there can be no contrariety of opinion in respect to these features of the case.

Rohrof v. Schulte.

After the employment of Brillo by appellee, to sell or exchange his land for property in Chicago, it appears that the former, in order more successfully to carry out his fraudulent scheme, constructed a fictitious individual denominated "Henry Meiger", and in the name of this feigned and imaginary party he conducted the negotiations which finally led up to and resulted in obtaining a deed for appellee's land.

To recapitulate, it is disclosed that Brillo went with appellee to Morgan Park, a suburb of the city of Chicago, and there pointed out to him fourteen lots, of the value of from $250 to $300 each, situated on the streets and avenues mentioned, and represented to him that these were the ones which Meiger desired to exchange for the land in controversy. Aside from Brillo's representations or statements, appellee was wholly uninformed in respect to the location of the lots proposed to be exchanged for his land. At the time he entered into the written contract, and at the time he executed his deed of conveyance, Brillo stated, or represented, that the lots embraced in the Meiger deed, and conveyed in exchange for appellee's farm, were the same which had been previously pointed out by him to appellee. The latter, relying upon these representations, and believing that he was receiving, in exchange for his land, the same identical lots situated in Morgan Park, upon the streets heretofore stated, was induced finally to execute his deed of conveyance. All of these representations were false, and known by Brillo to be so at the time he made them. Instead of conveying the lots previously shown to appellee, which he, under Brillo's representations, was led to believe he was receiving, other lots situated in a remote part of Morgan Park, in the open prairie, and of the total value of $466, were conveyed in exchange for a tract of land of the value of $3,000.

Counsel for appellants contend that the representations made by Brillo, as shown under the averments of the com-

plaint, and as disclosed by the court's finding, are not such as to justify appellee in relying thereon, as it does not appear that there was anything done by Brillo to prevent him from ascertaining the true location and character of the lots. It is insisted in the argument that the public records were at all times open to his examination, and from them he might have discovered the location of the lots. There is no merit in this contention. As a general rule, a contracting party has a right to rely on the express statement made in respect to a material, existent fact which is the basis of a mutual agreement or engagement, when the truth or falsity of such fact is known to the party making the statement, but unknown to the one to whom it is made. The latter, under such circumstances, is not required, before the final consummation of the engagement or agreement, to investigate or make a searching inquiry in regard to the truth or falsity of the statement or representation made by the other contracting party. *Kramer* v. *Williamson*, 135 Ind. 655, and authorities there cited; *Ross* v. *Hobson*, 131 Ind. 166. Brillo, having pointed out certain lots at the very place where they were located, thereafter, at the final consummation of the deal, induced appellee, through deceit or fraudulent statements, to believe that he was receiving a conveyance for the same identical lots. Appellee certainly had the right, under such circumstances, to rely upon these statements without resorting to an examination of the public records. *Campbell* v. *Frankem*, 65 Ind. 591; *Backer* v. *Pyne*, 130 Ind. 288.

As a rule, a person, in his dealings with another, is justified in relying upon a positive representation made by the person with whom he is dealing, in regard to a material, existing fact, when to discover the truth or falsity thereof would require investigation. A vendor of land who, by his false representations, has deceived a purchaser in respect to its location, will not be permitted, in an action, to excuse his fraudulent acts by the negligence of such purchaser in not

Rohrof *v.* Schulte.

examining some map or record from which he might have ascertained the true location of the land, or in otherwise failing to make an investigation or inquiry by which the falsity of such representation might have been exposed. *Speed* v. *Hollingsworth,* 54 Kan. 436, 38 Pac. 496; *Hoock* v. *Bowman,* 42 Neb. 80, 60 N. W. 389; *Dodge* v. *Pope,* 93 Ind. 480; *West* v. *Wright,* 98 Ind. 335; *Ledbetter* v. *Davis,* 121 Ind. 119.

Again, on another view of the question, Brillo was the agent of appellee to effect the sale or exchange of his land. Where one occupies the position of an agent, or any like position, he is required in all negotiations and contracts to state all matters within his knowledge fully and truly to his principal, and to make no representations which are not true in every material particular; and, as a general rule, the principal, by reason of the confidential relation existing between himself and his agent, has the right to rely and act upon the statements of the latter. *Robinson* v. *Glass,* 94 Ind. 211.

Appellants also urge, as an objection to both the complaint and special finding, that neither discloses that appellee, upon discovering the fraud in regard to the location of the lots, made a sufficient tender back of what he had received and demanded a rescission. The finding of the court shows that Brillo was the real party to the transaction, which he conducted in the name of a fictitious person; and that, before the commencement of this suit, appellee went to him and offered to reconvey the lots to Meiger, and to deliver up the note and mortgage, and demanded a rescission. But Brillo, it would seem, in order to conceal his fraud and to prevent appellee from restoring what he had received, denied that he had any authority to accept what appellee offered to return, and made a positive statement that he could do nothing in regard to the matter, and renewed his false statement that Meiger was at work in the rolling-mill at Cummings. Finally, it appears that, after the com-

mencement of this action, and after appellee's search for Meiger had proved to be destitute of any discovery of that feigned individual, he tendered to Brillo a good and sufficient deed, executed by himself and wife, reconveying the lots to Meiger, and again offered to deliver up the note and mortgage; and at the same time offered to convey the lots to Brillo or to any other person that he might designate, and again demanded a rescission; all of which was declined.

After the filing of the amended complaint, this deed of reconveyance, together with the note and mortgage in question, was lodged with the court subject to its order. These offers and attempts to restore and rescind, upon the part of appellee, as shown by the complaint and also by the special finding, were, under the entanglements and complications of the case brought about by the deficit of Brillo, certainly the utmost that could be exacted of appellee.

As a general proposition, in an equitable action to rescind, where the decree of the chancery court is invoked in order to secure a rescission, the strict rule, prevailing in cases at law, which requires a tender to be seasonably made before the commencement of the suit, does not control. In an equitable suit to rescind, on account of fraud, where the plaintiff has acted promptly upon discovering the fraud, and is in a position to restore the benefits received, it will be sufficient, in such a case, for him to offer in his complaint to restore what he has received; for, under such offer, the court may so mold its decree as to regulate, adjust, and protect the rights of the parties upon such conditions or terms as may be compatible with equity and good conscience. *Higham* v. *Harris*, 108 Ind. 246; *Westhafer* v. *Patterson*, 120 Ind. 459. It is at least evident, under the facts, that there was no such disposition manifested by appellee to hold on to what he had received as would deny him a standing in a court of equity to rescind the conveyance in question.

Again, upon another view, Brillo, by wrongfully denying that he had the right to accept the reconveyance, and in

concealing the fact from appellee that he, and not the alleged "Meiger", was the proper person to whom the lots, and other benefits received, should be restored, is surely, under the circumstances, not in a position to complain of the insufficiency of the tender. If there has been any failure in this respect, the blame therefor ought to be attributed to him, and not to appellee, whom he misled by the suppression of the truth that he and not Meiger was the person to whom restoration should be made. *Platter* v. *Board, etc.*, 103 Ind. 360; *House* v. *Alexander*, 105 Ind. 109, 55 Am. Rep. 189; *Hammond* v. *Pennock*, 61 N. Y. 145. It must follow, and we so conclude, that the second paragraph of the amended complaint, upon which the special finding rests, is sufficient to withstand a demurrer, and that the facts embraced in the finding sustain the court's ultimate conclusion.

It is next and finally insisted that the evidence does not sustain the finding. Counsel for appellee, however, contend that the evidence is not properly in the record, for the reason, among others urged, that the longhand transcript thereof has not been embodied in the bill of exceptions. With this contention we are compelled to concur. An examination of the record discloses that what purports to be a bill of exceptions, embracing the evidence, is nothing more than a mere transcript of the shorthand report of the evidence given upon the trial, which seems to have been filed with the clerk and signed by the trial judge; and, in this condition, it has been certified to this court.

This appeal was filed on July 9, 1898, and, consequently, the certification of the evidence must conform to the provisions of either the act of 1873 (Acts 1873, p. 194), or the act of 1897 (Acts 1897, p. 244). Both of these laws require that the evidence, before it can be certified to this court on appeal, must be embodied in a proper bill of exceptions; otherwise it can not be considered as a part of the record. *Wagoner* v. *Wilson*, 108 Ind. 210; *City of Alexandria* v.

Cutler, 139 Ind. 568; Jenkins v. Wilson, 140 Ind. 544; Porter v. Fraleigh, 19 Ind. App. 562; Luckenbill v. Kreig, 153 Ind. 479.

The evidence not being properly before us no questions depending thereon can be considered. There is no available error, and the judgment is therefore affirmed.