**CHESTERTON STATE BANK, Appellant (Defendant Below),**

v.

**George COFFEY and Rosemarie Coffey, Appellees (Plaintiff Below).**

No. 4–1082A323.

Court of Appeals of Indiana, Fourth District.

Oct. 4, 1983.

Harris & Welsh, Michael C. Harris, Chesterton, for appellant.

James L. Sullivan, Valparaiso, for appellees.

MILLER, Judge.

Chesterton State Bank, defendant-appellant, disputes a jury verdict, which awarded $23,000 to plaintiffs George and Rosemarie Coffey for conversion ($8,000) and for punitive damages ($15,000) when the Bank repossessed their automobile. The Bank asserts this judgment is in error because the Coffeys' tender of the amount due on their automobile loan was defective. We find the Bank's issues do not merit reversing the trial court and affirm the judgment below.

## ISSUES

Minimally paraphrased, the Bank poses the following:

1. Did the Coffeys meet the requirements of a valid tender of full payment on their automobile loan by presenting a third-party check, payable to both George and the Bank, to a teller rather than an officer when the endorsement of said check would bind the Bank to certain conditions regarding the title of the automobile?

2. May the Coffeys, whose right to recover depends upon a proper tender, rely on that tender when they fail to keep it open by depositing the same into the court?

## FACTS

The facts most favorable to the judgment reveal the following: In February, 1979, the Coffeys obligated themselves to the Bank on an automobile loan for a 1978 Thunderbird. Around Christmastime in 1980, the Coffeys' house burned down and with it went the coupon book for the installment payments of the loan. George wrote a letter to the Bank explaining the problem and enclosed his check for the January, 1981 payment. However, the Bank did not accept the check and mailed it back to him, uncashed, because there was no payment coupon or loan number. Surprisingly, the February payment, doubled to pay January's installment, was accepted. On or about March 10, a teller at one of the Bank's branches refused George's March payment in the absence of a payment coupon despite the availability of a relatively simple computerized routine for ascertaining loan numbers and issuing substitute documents.

On Tuesday, March 24, Robert G. Dunbar, president of the Bank, telephoned to inform a startled George he was three payments in arrears on the loan. George protested, but Dunbar remained steadfast and demanded payment. The next day, Wednesday, Edward Ross, a Loan Review Officer of the Bank, called Mrs. Coffey at work to tell her the Coffeys had delinquent accounts—the automobile loan and a ready-reserve account. Ross refused to inform her of the arrearage on either account. Later that day, George called Dunbar demanding to know how much they owed, and again, no balances were forthcoming. At no time did Ross or Dunbar indicate they were contemplating repossession. On Friday, an apparently frustrated George went to his credit union for enough money to pay off the

automobile loan. An employee at the credit union called the Bank and was able to obtain the total balance due. That afternoon, George went to the Bank, paid the total balance on the ready-reserve account, and tendered his loan pay-off check from the credit union. Both the teller to whom he presented the check and a second employee, who also saw the check, told him, "You'll have to speak to Mr. Dunbar," but that Dunbar was busy at that time. (It is significant to note the loan agreement merely requests payment at "its main or any Branch office" and does not designate payment to any specific bank officer.) George discovered Dunbar was not in his office so he left a message for Dunbar to call him at home. Dunbar failed to call George on Friday. As soon as the Bank opened Saturday, March 28, George again tried to reach Dunbar, was again informed he was busy, and left a message explaining he had business concerning the pay-off of his automobile loan. Dunbar did not return the call, and at noon, while Mrs. Coffey was shopping, the Thunderbird was repossessed from the grocery store parking lot with the pay-off check lying on the back seat. The following week, on April 3, the Coffeys brought a suit for conversion against the Bank, requesting compensatory and punitive damages.

In October, the Bank finally returned the car to the Coffeys upon payment of the original March pay-off balance of the loan. This was apparently accomplished after negotiations between the Coffeys' lawyer and the Bank. The Bank continued to refuse, however, to turn over the title until additional sums for repossession costs, attorney fees, etc. were paid. Between March and October, the Coffeys accumulated over $6,500 in car rental expenses. (The Coffeys tried to purchase another vehicle to take the place of the repossessed Thunderbird. Two dealers refused to extend credit on the basis of the repossession, and George's credit union would not release his funds until he could return the missing check.) The $8,000 judgment for compensatory damages was apparently based in part upon the rental costs.

At trial, the bank officers involved, Ross and Dunbar, disputed much of the Coffeys' testimony, especially regarding prior warning, or the lack thereof, that the car would be repossessed if they failed to pay the arrearages. They testified they based the decision to repossess not only upon the alleged default in the auto loan payments but also on insecurity of the Coffeys' credit. The loan was allegedly in arrears for March (when the installment check was refused) and for a partial installment not paid by George's insurer when he was disabled for two months in the summer of 1980. George had requested that the Bank notify him of any problems with the coverage, but it had failed to do so. The insecurity was allegedly based upon the arrearage on the ready-reserve account and upon speculation and innuendoes gleaned from other credit information, documentation of such information never being admitted at trial. However, Ross testified he knew, before the repossession, that the ready-reserve account had been paid in full.

The jury awarded the Coffeys $8,000 compensatory and $15,000 punitive damages.

## DECISION

■ We think it pertinent to first point out to the Bank that our standard of review does not allow us to consider the evidence most favorable to the Bank. Rather, we are constrained to consider that evidence which is most favorable to the judgment and can neither weigh evidence nor judge the credibility of witnesses. *Indiana Department of State Revenue v. Brown Boveri Corp.*, (1982) Ind., 439 N.E.2d 561. Therefore, under the circumstances, we cannot consider some of the evidence as presented in the Bank's appellate brief, which although favorable to the Bank, conflicts with the Coffeys' evidence.

### Validity of Tender

■ The Bank asserts the Coffeys did not present valid tender to cure their default and argues only an officer could en-

dorse the check because there were conditions on the back of the credit union pay-off check binding the Bank to the warranty that it had full right to convey title to the Coffeys and to certain conditions requiring preservation of the credit union's lien on the bill of sale and title. However, nowhere in the testimony did anyone assert that this was the original reason the Coffeys' check was not accepted. The sole reason the two bank employees had given for not taking the check was that George had to see Dunbar about it. This is clearly the prevention of full tender, especially here, where the loan's terms do not specify a tenderee other than the Bank and Dunbar was never available. *See Platter v. Board of Commissioners,* (1885) 103 Ind. 360, 2 N.E. 544 (referral to another person as preventing full tender of deed.) Thus, under the circumstances revealed by the testimony and evidence here, where defectiveness of tender was not the reason for failing to accept the check, the Bank cannot *now* complain that the tender was defective. *See Rohrof v. Schulte,* (1899) 154 Ind. 183, 55 N.E. 427 (wrongful denial of one's right to accept tender precludes claim that deed was defective because designated grantee was incorrect); *Platter v. Board of Commissioners, supra* (referral of tender to another person prevents argument that tender not specific because oral representations were ignored); *Dempster v. Miller,* (1954) 124 Ind.App. 518, 119 N.E.2d 720 (preventing completion of tender preempts the question of whether proper legal tender was offered; "it is not always necessary to produce the money and count it out."); *Greenwade v. Williams,* (1955) Ky., 281 S.W.2d 707, *overruled on other grounds* (deficiency in amount of tender waived when tender prevented); *O'Toole & Nedeau Co. v. Boelkins,* (1931) 254 Mich. 44, 235 N.W. 820 (issue of lack of legal tender); *Schaeffer v. Coldren,* (1912) 237 Pa. 77, 85 A. 98 (issue of lack of legal tender); *see also Doering v. Schneider,* (1920) 74 Ind.App. 294, 128 N.E. 936 (if one refuses tender for insufficiency, cannot later claim refusal because not due). The Bank is thus estopped from attacking any defect in the tender occasioned by printed conditions on the check. *See O'Toole & Nedeau Co. v. Boelkins, supra;* 5A CORBIN ON CONTRACTS § 1235, 532–33 (1964); *see generally McFarland v. Christoff,* (1950) 120 Ind.App. 416, 92 N.E.2d 555; WILLISTON ON CONTRACTS § 1819 (3d ed. 1972); 74 AM.JUR.2d *Tender* § 4 (1974).

■ This is not to say that the tender here was not defective. The check, as incorporated in the record, clearly indicates that by its endorsement, the Bank would warrant title to the vehicle and would be required to preserve the credit union's lien on "bill of sale" and title. Such conditions in an endorsement are appropriate requirements for a seller (car dealer) but definitely not for a lienholder. However, in other similar situations

> "[i]t has been ... held that acts, *insufficient in themselves to make a complete tender, may operate as proof of readiness to perform,* so as to protect the rights of a party under contract, where a proper tender is made impossible by reason of circumstances not due to the fault of the tenderer...."

*Schaeffer v. Coldren,* 237 Pa. at 84, 85 A. at 100 (Emphasis added); *O'Toole & Nedeau Co. v. Boelkins, supra.* Thus, despite the technical problem with the Coffeys' tender, we still find they were ready and willing to pay the balance of their obligation. If, in fact, the Bank had *refused* tender (as opposed to *preventing* it) on the ground of unreasonable conditions on the back of the check, we surmise the Coffeys might have easily and quickly remedied the situation to the Bank's satisfaction by obtaining another check, *sans* improper endorsement conditions from the credit union. As it actually happened, the Bank never complained of the problem at the time George first proffered the check, and it is now estopped from doing so.

### Keeping Tender Open

The Bank insists that Coffeys cannot recover because even if the presentation of the check were a valid tender, they failed to keep it open by depositing it in court. It merely argues that such tender into court

operates as a reminder of the ability and willingness of a party owing to pay his just debt. In support of such narrow argument, it cites us to cases wherein suit is brought to collect money. Such is not the posture of the case here, and we fail to see the relevance of this issue. However, the very narrowness of the issue makes for simple disposition.

The Coffeys sued the Bank for conversion. "Conversion is a tort involving the appropriation of the personal property of another to the tortfeasor's own use and benefit, in exclusion and defiance of the owner's rights and under an inconsistent claim of title." *Howard Dodge & Sons, Inc. v. Finn*, (1979) Ind.App., 391 N.E.2d 638, 640; *National Fleet Supply, Inc. v. Fairchild*, (1983) Ind.App., 450 N.E.2d 1015. The utilization of a conversion action is especially appropriate in cases such as this where wrongful repossession is at issue. *See, e.g., Cox v. Albert*, (1881) 78 Ind. 241; *Universal C.I.T. Credit Corp. v. Shepler*, (1975) 164 Ind.App. 516, 329 N.E.2d 620; *see also* Ind.Code 26–1–9–507; 69 AM. JUR.2d *Secured Transactions* § 591 (1973). Under the circumstances here, we fail to see how the issue of tender is implicated at all in an action for conversion except with respect to whether the Bank rightfully repossessed the car. (In other words, did the Bank have legal cause to repossess the car based on contractual default *associated with tender*?) We have already determined the Bank wrongfully prevented tender, whether valid or not; however, tender is not such a factor in an action for conversion that it must also be kept *open*. Conversion also contemplates a *single* wrongful action by the tortfeasor which is only "cured" by the payment of damages flowing from that act and/or returning possession of the property. The victim of a conversion is not required to justify the rightness of his position by continuing to keep a tender open which evidently did not prevent the conversion in the first place.

A similar solution was supplied by our supreme court in *Cox v. Albert, supra,* wherein that court stated tender is not even

necessary in a conversion case when the repossessing party fails to demand payment *and* fails to give notice of his intention to dispose of the property. Here, the Bank never notified the Coffeys with regard to its repossession of the car. According to *Cox v. Albert, supra,* then, the Coffeys did not even have to make an initial tender, much less keep it open.

In addition, we note the Bank made it impossible for the Coffeys to keep tender open when the pay-off check came into its own possession. When we view the issue commonsensically, we must conclude the Bank prevented Coffeys from keeping tender open even if it had been required. Under any of these three viewpoints, the Bank's issue of open tender becomes a nullity.

In light of the fact the Bank argues only issues regarding tender and none regarding the conversion charge, the validity of repossession, or the damages awarded, we must affirm for lack of presentation to us of reversible error.

YOUNG and SHIELDS, JJ. (sitting by designation), concur.