**STAR BANK, N.A. Southeastern Indiana and Greg King Appellants–Defendants,**

v.

**Lendo LAKER Appellee–Plaintiff.**

No. 69A01–9304–CV–141.

Court of Appeals of Indiana, First District.

Dec. 9, 1993.

468

Douglas R. Denmure, Aurora, for appellants-defendants.

John D. Gay, Gay and McCombs, Versailles, for appellee-plaintiff.

ROBERTSON, Judge.

Star Bank, N.A. Southeastern Indiana and Greg King, defendants below, appeal a judgment in favor of the plaintiff, Lendo Laker, in the amount of $225.00 and punitive damages in the amount of $7,000.00. We affirm in part and reverse in part.

Laker brought the action for replevin, trespass and conversion after the bank, while attempting to repossess two of Laker's tractors and a corn picker, moved Laker's horses and truck, and a neighbor's disc, causing damage, and refused to permit Laker to retake possession of the farm equipment, after Laker had paid the bank in full. The bank appeals that portion of the judgment awarding damages for wrongful conversion. The bank's arguments on appeal consist primarily of these: first, that the acts of its employees in moving various items of personalty on Laker's farm and in retaining possession of Laker's farm equipment for three weeks after Laker had paid the bank in full did not amount to a conversion; second, that the evidence is insufficient to permit an award of actual damages; third, that Laker's failure to amend his complaint to ask for punitive rather than treble damages requires that the award be reduced; and finally, that the evidence is insufficient to permit an award of punitive damages.

■ The scope of review in appeals questioning the sufficiency of the evidence is limited to an examination of the evidence most favorable to the judgment of the trial court and the reasonable inferences to be drawn therefrom. We will neither weigh the evidence nor judge the credibility of the witnesses, but will affirm the judgment if supported by evidence of probative value. *Chesterton State Bank v. Coffey* (1983), Ind.App., 454 N.E.2d 1233, 1235; *Census Federal Credit Union v. Wann* (1980), Ind. App., 403 N.E.2d 348, 350.

■ At trial, the court submitted Laker's complaint for damages to the jury solely upon a theory of criminal conversion.[1] To obtain relief upon this theory, it was not necessary for Laker to prove that any of the bank's employees or the bank had been convicted of criminal conversion. Laker need only have proven by a preponderance of evidence that a criminal conversion occurred. *Roake v. Christensen* (1988), Ind. App., 528 N.E.2d 789, 791.

Indiana Code 35–43–4–3 provides that a person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion. To "exert control over property" means, among other things, to take, drive, lead away or possess property. I.C. 35–43–4–1(a). For purposes of this case, a person's control over property of another is "unauthorized" if it is exerted without the other person's consent or if it is exerted in a manner or to an extent other than that to which the other person has consented. I.C. 35–43–4–1(b)(1), (2).

■ The bank does not dispute that its employees went to Laker's farm to retake possession of farm equipment pledged as security for a loan and that these employees did in fact move Laker's horse to the back of the barn; moved Laker's truck, which would not start, out of the way to gain access to other equipment; took pos-

---

1. A jury properly instructed upon the elements of a civil trespass or conversion could have reached the same result. Under Indiana law, a conversion occurs "either in the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's." *Foley v. Colby* (1971), 148 Ind. App. 391, 266 N.E.2d 619, 620–21. Generally, the difference between trespass and conversion is merely one of degree which is reflected in the remedy. W. Keeton, *Prosser & Keeton on Torts* ch. 3, § 15 (5th ed. 1984). In Indiana, the distinction between trespass and conversion is rather gray; the common law defines a conversion broadly enough to permit Laker to recover the actual damage he has sustained as a result of the bank's actions. *See Hardy v. Heeter* (1951), 120 Ind.App. 711, 96 N.E.2d 682.

session of a disc belonging to one of Laker's neighbors; and refused to release the equipment belonging to Laker, which the bank did repossess, for a period of three weeks after Laker had paid the bank what he had owed it. These actions constitute the exertion of control as defined by the legislature.

■ The absence of any authority to exercise control is shown by the evidence most favorable to the jury's verdict. Laker did not consent to the bank's actions with respect to his horse and truck, or the disc which was in his possession. And, while he may have pledged certain farm implements as collateral for a loan, thereby authorizing the bank to retake possession of the equipment should he default on his note, he did so only to the extent permitted by I.C. 26–1–9–503.

Indiana Code 26–1–9–503 permits a secured creditor to take possession without judicial process "if this can be done without breach of the peace." The statutory provision is a proscription against a secured party's use of force, intimidation or harassment in the repossession of a chattel, *Wann*, 403 N.E.2d 348; its purpose is to forbid acts that tend to provoke violence or any breach of the peace. *Id.* Hence, the statute does not authorize a secured party to break into or enter homes, buildings, enclosed spaces, to commit any crime against the defaulting party, or to disturb the peace. *Id.*

The evidence most favorable to the verdict establishes by a preponderance of the evidence that the bank's employees exceeded the bounds set by I.C. 26–1–9–503, as construed by the common law. *See Universal C.I.T. Credit Corp. v. Shepler* (1975), 164 Ind.App. 516, 329 N.E.2d 620, 622 (Common law and provisions of the UCC supplement one another and should be construed together). Bank employees entered Laker's barn when only his twelve-year-old son was at home; moved Laker's horse to the back of the barn where it proceeded to overgraze on alfalfa hay; forced Laker's truck down the hill in such a manner as to render the truck's brakes inoperable and to dig deep ruts into the land for a considerable distance; and, in the process of seizing a neighbor's disc, broke seven of its blades. The bank's actions were more than a technical trespass, *see id.;* they amounted to criminal mischief as that crime is defined by I.C. 35–43–1–2(a) (to recklessly, knowingly, or intentionally damage property of another person without the other person's consent).

In addition, the evidence shows that, while Laker, in the end, offered no resistance to the repossession, when Laker arrived and found his property being repossessed, he was angry. According to employee Carroll Grubbs, "they kind of argued around a little, he [Laker] hollered and cussed a lot, threw buckets, which is normal, you know ..." Thus, the actions of bank employees tended to provoke violence and caused a breach of the peace. *See Wann*, 403 N.E.2d at 35 (If repossession verbally or otherwise contested at time of attempted repossession by defaulting person in control of chattel, creditor must desist and pursue its remedy in court).

■ Criminal conversion requires that the unauthorized control be either knowing or intentional. *Coffel v. Perry* (1983), Ind. App., 452 N.E.2d 1066, 1069. A person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. 35–41–2–2(b). A person is presumed to have intended the consequences of his acts. *Andrews*, 505 N.E.2d at 821. Criminal intent to commit a specific criminal act may be inferred from the voluntary commission of the act. *Id.* Evidence of good motive for commission of a crime does not constitute a defense even when specific intent is required. *Id.*

■ Laker testified that when he found his Belgian draft horse, it had been barely tied with an eight foot rope and the horse was eating alfalfa hay. Three fourths of a bale of hay was either gone or had been trampled down. The horse's veterinarian observed the hay.

The bank's employees who were involved in moving the horse denied that the horse had been tied loosely. Each testified that

he or she knew that a horse should not be permitted to overeat. One of the employees testified that there was not any hay anywhere around the horse; the other testified that he had not seen any fresh alfalfa hay and that he had moved a bale of hay.

The evidence is thus in conflict as to whether the bank's employees, knowing that a horse which is not properly restrained will overeat, nonetheless tied the horse so near to alfalfa hay and so loosely that the horse could easily reach the hay. The jury's verdict in favor of Laker indicates that the jury resolved the many questions of credibility in favor of Laker. Accordingly, from the jury's perspective, we find there to be sufficient evidence to reasonably infer that, regardless of their motives, the banks' employees more probably than not knowingly exerted unauthorized control over Laker's horse.

■ The evidence also supports a determination that the bank knowingly exerted unauthorized control over Laker's truck. Laker testified that his truck was not blocking the bank's access to his tractor and that the tractor could have been started and backed out without having moved the truck. It was Laker's opinion that the employees moved the truck to gain access to his friend's disc. In any event, the truck had been pushed down an incline. The movement of the truck caused deep ruts in the ground which the bank employees offered to fill with stone. The offer demonstrates that the bank's employees knew that the damage to the land had been caused by the movement of the truck for which they were responsible and thus that they had exceeded the scope of their authority.

■ Likewise, the evidence supports a determination by a preponderance of the evidence that the bank's employees knew they were exceeding the scope of their authority when they took possession of Laker's neighbor's disc. There is no evidence that the employees knew the disc belonged to someone other than Laker. However, the evidence does show that, believing the disc to be collateral subject to repossession, they insisted on taking it after it had become apparent it would be difficult to remove because it had sunk into the ground, at the cost of seven blades and to the damage of Laker's real estate.

■ Finally, there can be no real dispute that the bank knew it was exerting unauthorized control over Laker's tractors when it accepted payment in full of the debt owed by Laker yet refused to relinquish control over the collateral unless Laker signed a statement releasing the bank from liability for any damage to his equipment. At this point in time, the bank's agents knew that Laker and his friends had gone to the place where the property had been stored and had attempted to take it back. The bank also knew that Laker had paid the debt and the costs of the repossession.

■ When possession originates through a proper exercise of a right, a conversion in derogation of the plaintiff-bailor's rights occurs after the plaintiff makes an unqualified request for a return of the property. *THQ Venture v. SW, Inc.* (1983), Ind.App., 444 N.E.2d 335, 339. A demand and refusal constitute evidence of a conversion. *Mockford v. Iles* (1939), 217 Ind. 137, 143, 26 N.E.2d 42. In the context of a civil conversion, the failure to deliver upon demand places upon the defendant the burden of establishing a lawful excuse for the refusal. *Id.* at 144, 26 N.E.2d 42. The insistence on the payment of excessive or improper charges by a lienholder relinquishes the lien. *See Chesterton State Bank,* 454 N.E.2d at 1235; *Yoder Feed Service v. Allied Pullets, Inc.* (1977), 171 Ind.App. 692, 359 N.E.2d 602, 604.

The bank argues that, even if it converted Laker's property, Laker failed to prove by sufficient evidence the amount of his damages. We must agree with this assertion. The jury received only two instructions on the measure of compensatory damages. The court instructed the jury that where personal property is partially destroyed, the measure of damages is the difference between the fair market value of the property immediately before the damage and the fair market value of the prop-

erty immediately after the damage. The court also instructed the jury that the measure of damages for permanent injuries to an animal is the difference between the value of the animal immediately before and the value in the condition of the animal after the injury. The jury received no instruction on the measure of damages for injury to real estate.

Laker offered no evidence of the fair market value of any of his personalty after it had been damaged by the bank. Laker did testify that the horse had been purchased for $1750.00; that he had found a horse to replace it for $2500.00; and that before the horse was permitted to overeat and had rolled to relieve the colic, he would not have sold it for $4000.00. Laker also testified that the horse was now only worth what he could get for it for dog food because it had injured its left hip when it had rolled and could no longer work; however, Laker did not present any evidence establishing what the horse's fair market value for dog food was. Thus, the jury could not have arrived at its award of $225.00 by obtaining the difference between the value of the animal immediately before and the value in the condition of the animal after the injury.

As to Laker's other personalty which was damaged, Laker offered only evidence of the cost of repair. In *Hann v. State* (1983), Ind.App., 447 N.E.2d 1144, this court considered whether evidence of the cost to repair alone may be considered in assessing damages to personal property, without resort to before and after value evidence. We held that

[i]n property damage actions where the property is repairable or restorable, damages may be proved (a) by proof of the difference between the fair market value thereof immediately before and immediately after the traumatic event, or (b) by proof of the cost to repair or restore the property, accompanied by proof (1) of the actual physical damage to the property sustained as a proximate result of the traumatic event, (2) the cost to repair such damage was reasonable, and (3) such cost to repair bears a reasonable

relationship to the difference between the fair market value of the property just before and just after the traumatic event, at the option of the party bearing the burden of proof, together with proof of any other amounts reasonably expended as a proximate result of the wrongful act.

*Id.* at 1147.

As to the disc, Laker offered evidence that the bank's employees broke seven blades removing the disc but he tendered no evidence that the estimate he received to replace the blades, which included eight hours of labor at a rate of $30.00 per hour, was reasonable. The evidence of the bank tended to show that it was not. Laker also did not demonstrate that the cost of the repair, $347.03, was reasonably related to the difference in the value of disc before and after it was damaged.

The same can be said of the damage Laker claimed the bank did to his tractor during the period it was in the bank's possession. Laker introduced into evidence an estimate for a complete overhaul of the tractor, totaling $2373.88. There was no evidence that a total overhaul was necessary to repair the damage occasioned by the bank's conversion, which occurred only during the last three weeks the bank possessed the tractor, that the estimate was a reasonable estimate to repair the tractor, or that the amount of the repair was reasonably related to the difference in market value. Laker offered no evidence whatsoever of the cost of repair to his truck. Thus, the jury could not have properly calculated the amount of Laker's damages from the evidence and/or instructions given.

The bank argues that without an award of compensatory damages, the award of punitive damages cannot be sustained. The two most recent supreme court cases which have reaffirmed this rule, *Erie Ins. Co. v. Hickman* (1993) Ind., 622 N.E.2d 515, and *Sullivan v. American Casualty Co. of Reading, Pa.* (1992), Ind., 605 N.E.2d 134, 140, applied the rule in the context of a determination that the plain-

tiffs had failed to prove their case as to liability. *Cf. also Grimes v. Jones* (1991), Ind.App., 567 N.E.2d 858, *trans. denied* (Trial court dismissed claim for compensatory damages; Jones dismissed complaint seeking injunctive relief). In *Henrichs v. Pivarnik* (1992), Ind.App., 588 N.E.2d 537, this court held, in a defamation case, that the prerequisite for an award of punitive damages is the showing of the invasion of a legally protected interest, i.e. a legal injury. There, we held that where a communication is defamatory per se, a legally cognizable injury has occurred and damages are presumed.

The unlawful removal of the personal property of another is an injury for which the law gives an action and from which it implies nominal damages, at least. *Richardson v. Brewer* (1881), 81 Ind. 107, 109. This being so, the jury's verdict in favor of Laker establishes that it had found that the bank had invaded an interest of Laker's which the law protects. Accordingly, although the award of compensatory damages was not supported by the evidence, Laker was entitled to nominal damages, and the award of punitive damages may be sustained.

 The bank argues that because Laker did not ask for punitive damages in his complaint, he is not entitled to receive them. Laker maintains that the issue of punitive damages was tried by implied consent and points out that neither the bank nor the trial court forced him to elect between the two remedies.

The record reflects that the jury was instructed on both treble and punitive damages, and charged that it could not award both types of damages. The bank voiced no objection at trial to Laker's argument to the jury on the matter of punitive damages or the instructions on the basis that Laker had made or must make an election of remedies. Therefore, we deem the bank's assertion that punitive damages could not be awarded because of Laker's failure to specifically ask for them in his complaint to be waived and/or the claim for punitive damages to be tried by implied consent.

 Lastly, the bank argues that the evidence does not support an award of punitive damages. Punitive damages may be awarded only if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future." *Hickman*, at 520 (quoting *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137–38).

 Admittedly, the jury could have found that the damage which the bank occasioned upon Laker's property was merely the result of mere negligence, indifference, or simple human failing. But, in reviewing an award of punitive damages, we must affirm if there is any evidence or reasonable inferences supporting the jury's determination that the bank did convert Laker's property with the requisite mental state. Appellate review of the sufficiency of the evidence on the issue of punitive damages involves neither greater judicial scrutiny nor lesser deference to jury determinations than the review of other sufficiency questions. *Hickman*, at 520–21; *Bud Wolf Chevrolet*, 519 N.E.2d at 137. We will affirm a judgment of punitive damages if, considering only the probative evidence and the reasonable inferences supporting it, without reweighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence. *Hickman*, at 520–21; *Bud Wolf Chevrolet*, 519 N.E.2d at 137.

 From this perspective, we find there to be sufficient evidence in the record to sustain the award of punitive damages. The jury viewed photographs of Laker's farm taken after the bank had removed the disc and pushed Laker's truck down the hill. The pictures visually substantiated Laker's testimony concerning the extent of the bank's destructive acts. The jury heard two of the bank's employees admit

that they knew something about horses and that they knew a horse should not be permitted to overeat; yet, they had permitted the horse to graze and had failed to move the horse back to its original location after they had removed the tractor. The jury heard from both Laker and the bank's employees about how difficult it was for them to take possession of the disc, yet they had persisted until they had gotten it, breaking seven of the disc's blades in the process. The jury also heard from Laker and another of his witnesses about how the bank had stored Laker's equipment in the open, without any covering, permitting it to have been exposed to rain and snow and to have become inoperable. Thus, there is some evidence of probative value from which the jury could conclude that the bank not only violated Laker's interest in his personalty; it inflicted injury to Laker's property in a spirit of wanton disregard of Laker's rights.

Moreover, the evidence reflects that the bank, knowing that Laker was angry about how the bank had treated him and of his claims that it had damaged his horse and equipment, and fully aware that Laker had paid off the loan and all costs, nevertheless refused to return the equipment to him without Laker first releasing the bank "from any and all liability or damage" in connection with the repossession, storage and loss of use of his equipment. The bank's attempt to force Laker to relinquish his rights against the bank by withholding property which rightfully belonged to him, and in which the bank no longer had any interest, when coupled with the manner in which the bank went about taking repossession of the collateral in the first place, is sufficient to permit the jury to infer that the bank was acting with malice, fraud, gross negligence, or oppressiveness when it converted Laker's property. *Cf. Chesterton State Bank*, 454 N.E.2d 1233; *True Temper Corp. v. Moore* (1973), 157 Ind. App. 142, 299 N.E.2d 844.

Hence, for the reasons stated, we conclude that the judgment in favor of Laker and the award of punitive damages should be affirmed. The award of compensatory

damages in the amount of $225.00 is not supported by sufficient evidence and is ordered vacated.

Judgment affirmed in part and reversed in part.

BAKER, and NAJAM, JJ., concur.