ON PETITION TO TRANSFER
GIVAN, Justice.
Laker brought suit against the Bank alleging the cause of various injuries to real and personal property when they undertook to remove certain farm machinery from his premises because of Laker’s default on a loan for which the machinery was security. A jury trial resulted in a verdict in Laker’s favor of $225 in compensatory damages and $7,000 in punitive damages.
The facts are: Laker obtained a loan from Star Bank and pledged as collateral two tractors, a com picker, and a disc. When Laker defaulted on the loan, the Bank sent its agents and employees to Laker’s home to repossess the machinery. In order to gain access to one of the tractors, it was necessary for the agents of the Bank to roll Laker’s truck away from the entrance of a barn. The act of moving the track caused rats to be left in Laker’s property.
In order to reach the other tractor, it was necessary for the Bank’s agents to move two of Laker’s horses. Laker alleged that one of the horses was negligently tied near some fresh alfalfa hay where she ate a sufficient quantity to induce colic which in turn caused her to thrash about until she permanently injured one of her hips.
In attempting to repossess the disc, the agents of the Bank mistook a neighbor’s disc, which Laker had borrowed, as the disc on which they had a lien. The disc was parked in the bam lot and had been so parked for a period of time, which caused the disc to sink into the ground. When the Bank’s agents pulled the disc from the ground, they broke at least one of the discs. (The Bank claims they only broke one, Laker claims they broke *803 seven discs.) Laker testified that it cost $347.03 to repair the disc.
He also testified that he had purchased the horse for $1,750, that he had found a horse to replace the injured horse for $2,500. He further testified that he would not have taken $4,000 for the horse that was injured but that following her injury she could only be sold for dog food.
At the time the Bank repossessed the tractors, one of the tractors had its spark plugs removed. The Bank took possession of the tractor without replacing the spark plugs, stored it in an open lot where it remained for some three months with the sparkplug removed. Laker testified that as a result the engine was filled with water which froze, damaging the engine. He testified that he received an estimate to overhaul the tractor engine for a total of $2,370.88.
The Court of Appeals correctly observes in Star Bank, NA, v. Laker (1993), Ind.App., 626 N.E.2d 466 that in none of these instances did Laker establish the amount of damages in a proper manner. As observed by the Court of Appeals, the proper measure of damages in an instance of this sort is the fair market value of the tractor, the horse, or the disc immediately before the damage and the fair market value of that object immediately after the damage. It is abundantly clear from the evidence that in each instance, Laker in fact did suffer damage at the hands of the agents of the Bank. However, in each instance the jury was left to guess at what the actual damage was.
The Court of Appeals reversed the award of actual damages because of this lack of proof. However, this Court has stated on several occasions that an award of nominal damages may support an award of punitive damages. Arlington State Bank v. Colvin (1989), Ind.App., 545 N.E.2d 572, citing Hibschman Pontiac, Inc. v. Batchelor (1977), 266 Ind. 310, 362 N.E.2d 845.
When one views the evidence in this record, it becomes obvious that the jury might well have guessed Laker’s damages to be far in excess of the $225 which they allowed. However, being uninformed as to the actual amount of damages, they chose to award Laker a nominal sum of $225 for the actual damage he suffered. Having done so, it was entirely proper for the jury to then consider punitive damages. Their finding in that regard of $7,000 we find in keeping with the evidence in this case from which the jury was justified in finding that the Bank’s agents acted in an unreasonable and unnecessarily damaging manner in removing the machinery from Laker’s property.
The record further shows that following the taking of the property by the Bank, Laker paid the Bank the entire amount of money owed in order to redeem his machinery. However, the Bank refused to release the machinery unless Laker would execute a release holding them harmless for any damage they did in retrieving the machinery. This Laker refused to do.
The Bank’s agents had obtained the machinery on December 30, 1991. It was not until after Laker had brought this cause of action against the Bank and on the day of a prejudgment possession hearing held on February 7, 1992 that the last of Laker’s property was returned to him by the Bank. This action alone by the Bank is full justification for the jury’s award of punitive damages.
The judgment of the trial court is affirmed.
DICKSON and SULLIVAN, JJ., concur.
DeBRULER, J., concurs and dissents with separate opinion in which SHEPARD, C.J., concurs.